STATE v. PETE MILLER AND A. B. MILLER.

(Filed 19 May, 1943.)

**1. Homicide § 11—**

In a prosecution for homicide, where defendants are on their own premises, they are under no obligation to retreat, and if assaulted, they have the right to stand their ground and return blow for blow, or shot for shot, in their own necessary self-defense; and they are under no duty to "quit the combat" or give notice that they have abandoned the fight thus thrust upon them. They are entitled to have the law of self-defense, as applied to these facts, explained to the jury.

**2. Homicide § 27f—**

Where, in a prosecution for murder, the Millers, father and son, defendants, and the deceased Grimsleys, father and son, engaged in a fight and both sides retired from the field, and the defendants' evidence tends to show that thereafter while the two defendants were at work in or near the barn on their own premises, they were murderously assaulted with firearms by the Grimsleys and in their self-defense shot and killed both Grimsleys, it was reversible error for the court to charge the jury that self-defense would not be available to the defendants, if they provoked the fight by language or conduct towards the Grimsleys which was calculated or intended to bring about the difficulty, unless they had abandoned the fight and given their adversaries notice thereof.

APPEAL by defendants from *Thompson, J.,* at September Term, 1942, of ROBESON. New trial.

Criminal prosecution under indictments for the murder of O. D. Grimsley and for the murder of W. G. Grimsley, consolidated for trial.

The defendants live on a small farm about one-half mile east of the hard surfaced highway leading from Fairmont, N. C., to Lake View, S. C., which Pete Miller purchased from O. D. Grimsley. O. D. Grimsley owned farm land on both sides of the Miller land. To go from the homestead land on the highway to the farm on the other side of the

Miller land the Grimsleys usually traveled the farm or neighborhood road that passed the Miller home, corn crib and other outhouses.

A. B. Miller is the son of Pete Miller and lives with him. W. G. Grimsley is the son of O. D. Grimsley and lives in a house on the O. D. Grimsley place. Pete Miller is the son-in-law of O. D. Grimsley.

On the morning of 22 April, 1942, W. G. Grimsley left the home place on his way to the other farm, traveling the farm road with a mule and plow. The plow was on a sled or drag. Pete Miller had dug a small trench across this road about 200 yards east of his house, but on his land, to drain off the surface water. When W. G. Grimsley reached this drain he stopped and began to fill it up. Pete Miller sent the defendant A. B. Miller to reopen the drain. He would open it as fast as Grimsley filled it. Pete Miller then came out with a four-foot plank or slab, urged A. B. to "knock hell out of him with the hoe" and, upon arriving at the scene, assaulted Grimsley with the piece of board, or, as shown by other testimony, Grimsley assaulted A. B. and Pete, in an effort to get him off his premises, struck at him with the slab or board.

They then separated, the Millers going back to their home and Grimsley going on to the home of one Dow, the tenant on that farm. There he got Dow's gun. Dow and another tenant disarmed him. Grimsley then returned to his father's home by a woods path. He told his father, O. D. Grimsley, of the difficulty. A few minutes later the two Grimsleys and the wife of O. D. left and went to the home of W. G. Grimsley. W. G. Grimsley went in, remained a few minutes and came back. All of them, including the wife of W. G., then went down the highway to the farm road, turned into the farm road and went on to Pete Miller's house. This was about 30 minutes after the incident at the drain. From here on the evidence is in sharp conflict.

According to the evidence for the State the four Grimsleys were on their way to the other farm to pull tobacco plants. As they neared the Miller home none of the Millers could be seen. The defendants had concealed themselves in a corn crib near the path, Pete being armed with a gun and A. B. with a rifle. As the Grimsleys, who were walking ahead of their wives, went by the corn crib, Pete emerged, shot O. D. and said: "I am going to get even with you." Then A. B. Miller came from the corn crib and commenced shooting. The Grimsley men drew pistols and returned the fire. As a result both Grimsleys were killed.

The version of the defendants is quite different. After the difficulty at the drain the Millers had breakfast and Pete and A. B. went to the barn. Pete began to repair a corn and bean planter in front of the barn and A. B. went in the crib and began shucking corn. As the Grimsleys passed the dwelling Mrs. O. D. Grimsley remarked, "I do not see any of them around here." They proceeded on and discovered Pete

at the barn working on machinery. He heard Mrs. Grimsley say, "Odey, don't do that, don't do that, Pete ain't bothered you." As Pete raised up, turned and looked at them, the Grimsleys opened fire, cursing and saying they would kill him. O. D. Grimsley took a position to the right and W. G. Grimsley took a position to the left of the barn door, subjecting Pete to a crossfire. Pete Miller jumped and grabbed his shotgun just inside the barn door and fired between them. They then rushed him as he reloaded. O. D. Grimsley then said: "I will kill you, God damn you." Pete then fired a second time, the load striking O. D. in the abdomen. About this time A. B. Miller jumped out the door and, seeing the Grimsleys firing at his father, shot W. G. Grimsley with a rifle just as Grimsley was in the act of firing at Pete. Both Grimsleys died from the wounds received.

The solicitor announced at the beginning of the trial that he would not seek a verdict of murder in the first degree.

The jury returned for their verdict that Pete Miller is guilty of murder in the second degree in the death of O. D. Grimsley and not guilty as to the death of W. G. Grimsley, and A. B. Miller is guilty of manslaughter in the death of W. G. Grimsley and not guilty as to the death of O. D. Grimsley. The court pronounced judgment on the verdict and defendants appealed.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*

*T. A. McNeill, W. S. Britt, C. P. Britt, and Varser, McIntyre & Henry for defendants, appellants.*

BARNHILL, J. In its charge the court instructed the jury as to Pete Miller as follows:

"There is another principle applicable, as I understand the evidence in this case, and that is this: If the defendant, Pete Miller, provoked the fight or the killing by using any language or conduct toward the deceased, O. D. Grimsley, or the son of the deceased, W. G. Grimsley, which was calculated and intended to bring about the fight, then, gentlemen of the jury, the plea of self-defense would not be available to him, unless he shows that he had abandoned the fight, and that the deceased had notice of such abandonment before the mortal wound was given."

As to A. B. Miller he charged as follows:

"This plea of self-defense would not be available to the defendant, A. B. Miller, if he provoked the difficulty by language or conduct which was calculated or intended to bring about the difficulty, unless he had quitted the fight in good faith and given his adversary notice of such action on his part."

If the homicides occurred in the manner and under the circumstances disclosed by the testimony for the State there was no element of self-defense in the killings. The defendants are guilty, at least, of murder in the second degree. This, however, the defendants deny. They insist that they killed their assailants under the circumstances outlined by them. It is upon this theory and upon this state of facts that they press their plea of self-defense.

There is nothing in their testimony to indicate that they used any language calculated or intended to bring on the fight or that they otherwise provoked the difficulty. They were on their own premises. They were under no obligation to retreat. *S. v. Anderson,* 222 N. C., 148, and cases cited. If they were assaulted in the manner outlined by them they had the right to stand their ground and return blow for blow or shot for shot in their own necessary self-defense. Being on their own premises at their own home when murderously assaulted they were under no duty to "quit the combat" or give any notice that they had abandoned the fight thus thrust upon them. They are entitled to have the law of self-defense, as applied to these facts, explained to the jury.

An examination of the charge as a whole discloses that the court below conceived that the right of self-defense, if any, did not grow out of the circumstances immediately arising at the barn. It assumed instead that this fight was a continuation of the difficulty which arose some time theretofore at the drain ditch. In stating the contentions it enlarged upon this theory, both from the standpoint of the State and of the defendants, charging the jury in part as follows:

"The State says and insists further that the plea of self-defense is not available to either of the defendants in this case, because in this case the defendants, one or both of them, provoked this fight, brought on the difficulty down there where the drain was dug across the road, that that started the fight, that W. G. Grimsley was down there at the time filling possibly a little drain across the road . . . and that A. B. Miller provoked this difficulty, caused it to start in the first place, that they never quitted the fight or if they did quit it, they never notified either O. D. Grimsley or W. G. Grimsley that they had quitted the fight, but instead of that they went to their home, Pete Miller getting the shotgun and A. B. Miller getting the rifle and went down to the barn with intent, so the State says and insists, as this evidence discloses, of killing W. G. Grimsley when he came back after his mule and plow."

This tends to emphasize rather than to mitigate the error. The rule of law as stated by the judge relates to an affray presently existing and not to prior difficulties. We do not understand that under these conditions the defendants would be deprived forever thereafter of the right to defend themselves unless or until they gave some further notice to the

Grimsleys that they did not intend to pursue the matter further. The law is not so harsh or so unreasonable. While the former assault may have been the motivating cause of the gun battle it did not require the application of this limitation upon the right of self-defense.

That occurrence tends rather to show malice on the part either of the Grimsleys or of the defendants. If the Grimsleys assaulted the defendants at the barn, as contended by them, their conduct was prompted, no doubt, in part at least, by animosity engendered at the drain ditch. If the defendants waylaid and shot the Grimsleys, as contended by the State, the same is true as to them. These phases of the testimony should be submitted to the jury under proper instructions.

It follows that the quoted charge, as given, had no application to the facts in this case. Under the theory of the State the defendants deliberately concealed themselves, waylaid and killed the Grimsleys. Hence, it is not pertinent to the State's evidence. If the jury should find that the homicides occurred as testified to by the defendants the charge is equally inapposite. It was misleading and had the effect of depriving defendants of their right of self-defense.

We must not be misunderstood. Even if the Grimsleys assaulted the defendants at the barn with pistols in the manner and under the circumstances testified to by them, the guilt or innocence of the defendants would depend upon the motive which prompted them to fight back. If they engaged in the gun battle as willing participants by reason of malice or ill will instilled by the fight at the drain ditch they would be guilty of murder in the second degree. If they did so, prompted by passion aroused by an unprovoked assault and not by the motive of self-defense, they would be guilty of manslaughter at least. This, as well as the question of excessive force, is, in any event, for the jury.

The indicated error in the charge entitles the defendants to a

New trial.