**Loyd C. MOSLEY, Plaintiff in Error,**

**v.**

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Oct. 27, 1971.

Certiorari Denied by Supreme Court

Feb. 7, 1972.

Harold E. Brown, Chattanooga, for plaintiff in error.

David M. Pack, Atty. Gen., Lance D. Evans, Asst. Atty. Gen., Nashville, Donnie W. Poole, Asst. Dist. Atty. Gen., Chattanooga, Frank M. Groves, Asst. Dist. Atty. Gen., Lookout Mountain, for defendant in error.

RUSSELL, Judge.

## OPINION

■ The threshold question in this case is whether or not the Bill of Exceptions should be considered by this court. The plaintiff-in-error, Loyd C. Mosley, on May 20, 1971, filed a motion "to dismiss the Bill of Exceptions", wherein he contends that the last day for its timely filing was March 14, 1971, and that it was not filed until March 17, 1971. It appears that his counsel was employed, and relied upon the official court reporter (who was partially paid in advance) to timely prepare the Bill of Exceptions, which it is contended was not done. Mosley moves that the case be dismissed, or that he be granted a new trial. (He stands convicted of second degree murder and sentenced to ten years in the penitentiary.)

The State, on the other hand, filed on May 27, 1971, a motion to affirm the judgment, on the ground that the Bill of Exceptions was filed three days late, so could not be considered; and that there is no error apparent in the Technical Record.

It appears that the Motion for a New Trial was overruled and an appeal granted on December 14, 1970, and ninety days allowed for the filing of the Bill of Exceptions. However, another minute entry appears on December 16, 1970, reflecting the action of the court on December 14; and the court clerk's certificate on the Bill of Exceptions contains the following note:

"PLEASE NOTE:

The ninety days allowed to appeal expired on March 16, 1971, but this date was an official holiday and the Court-house was closed due to a Municipal Election for the City of Chattanooga, therefore the Court allowed the transcript to be filed on March 17, 1971.

· (s) Clyde H. Sanders
Criminal Court Clerk"

The Bill of Exceptions was in fact authenticated by the trial judge on March 17, 1971.

We believe that both sides are correct in contending that this Bill of Exceptions is late. However, we believe that justice will best be served by our invoking the provisions of Chapter 475 of the Public Acts of 1970 on our own motion, allowing same to be validated and considered, and we so do.

Two alleged errors are assigned. It is contended that the evidence preponderates against the verdict, and that Mosley was denied a speedy trial.

■ Mosley and his victim, Hitchcox, were friends and neighbors in a mobile home park. On the night in question they were drinking together at a bar when it closed at nearly 3 a. m.; and, since Hitchcox was intoxicated (a fact chemically established after his death) Mosley insisted that Hitchcox leave his car and ride home with him. An argument started on the way home and continued in front of Hitchcox's trailer. Hitchcox was armed with a .25 calibre automatic pistol, and pointed it at Mosley and apparently threatened him with it. However, his common law wife persuaded him to put the pistol in his pocket. Mosley moved his car from the vicinity of Hitchcox's trailer to the vicinity of his own. Shortly thereafter, according to the State's proof, a shot was fired outside Hitchcox's trailer, presumably by Mosley. Apparently the shot was not fired into the Hitchcox trailer, but would appear to have been a challenge. Hitchcox was quick to respond. He procured a bolt-action shotgun and proceeded to the vicinity of the door of his trailer. He fired one shot with the shotgun at about the

same time that Mosley apparently fired fired the first of three more shots fired in quick succession with a high-powered rifle from about thirty feet outside the front door of the Hitchcox abode. One of the rifle bullets went all the way through Hitchcox's chest, killing him instantly.

Mosley's theory was one of self-defense. He denied the first shot, and claimed that he armed himself only after Hitchcox was seen with his gun and heard to say that he was going to kill Mosley; and testified that he was trying to run out of sight when Hitchcox fired at him, and that he then returned the fire literally with his eyes closed.

We believe that the jury was justified in finding that Mosley had become angry because of the argument and Hitchcox's assault with the pistol, and had determined to arm himself and assert his manhood. He procured his rifle, took a position in front of decedent's trailer (where four rifle spent shells were later found), fired a challenging shot, and when Hitchcox responded to the challenge Mosley killed him in the exchange of gunfire.

We believe that either of these men could have avoided this shooting. Mosley did not have to arm himself and return to Hitchcox's trailer. (He told Hitchcox's brother-in-law after the shooting that, "I can't help it, I cannot be walked upon.") Hitchcox did not have to arm himself and go out to meet Mosley. It seems highly unlikely that Mosley would have shot him had Hitchcox simply laid low. The first shot obviously was not at him, and it seems likely that it could have been fatal had Mosley wanted to shoot Hitchcox without warning.

This appears to be a clear case of mutual combat, engaged in willingly by two drinking, angry neighbors. They chose deadly weapons to duel with, and death to one was the foreseeable result.

The law of mutual combat culminating in homicide in this State has been dealt with rather recently by our Supreme Court in the case of Hunt v. State, 202 Tenn. 227, 303 S.W.2d 740 (1957), which appears to be quite analogous to the case sub judice and to control our disposition of it. In *Hunt*, he had been convicted of second degree murder and given ten years for the fatal knifing of a man who set upon him to avenge an attack upon the deceased's wife. Hunt claimed that he was attacked and was only defending himself. Our Supreme Court said:

"Be all this as it may, it clearly appears to us and there is ample evidence in the record that this was a mutual combat after it got started."

*    *    *    *    *    *

"[1, 2] To say the most on behalf of the State's evidence the deceased and his brother were the originators of this fight and attack. If we take the State's theory of it the defendant was in the house at the time these two men came after him and he voluntarily came out and entered into a mutual combat. The jury and trial judge at least believed this and we find no reason to disbelieve it."

"Under such a situation as this the homicide is voluntary manslaughter and not second degree murder. Our statute, Section 39–2409, T.C.A., defines manslaughter thus:

'Manslaughter is the unlawful killing of another without malice, either express or implied, which may be either voluntary upon a sudden heat, or involuntary, but in the commission of some unlawful act.'

"Clearly the authorities support the proposition at common law a killing ensuing from a sudden transportation of passion or heat of blood, as in a fight or sudden combat, is manslaughter. State v. Durham, 201 N.C. 724, 161 S.E. 398."

"It is said in 40 C.J.S. Homicide § 48, Subsec. b, p. 912, that:

'A homicide resulting from mutual combat or the excitement and heat of

passion arising therefrom is voluntary manslaughter. There must be a mutual intention to fight, and, it has been held, deadly or dangerous weapons must be used.'

"In support of this statement from the text of Corpus Juris Secundum many cases are cited. One of these such cases is that of State v. Miller, 223 N.C. 184, 25 S.E.2d 623. In this case the defendant willingly engaged in a gun battle and out of passion aroused by an unprovoked assault. The court there held that he was guilty of manslaughter even though he was attacked on his own premises. Obviously the facts of this case are similar to those herein."

"After a very thorough study and consideration of the matter we are satisfied that under the facts of this case the defendant is only guilty of voluntary manslaughter."

"[3] For the reasons expressed we must overrule all assignments of error except that going to the degree of the crime of which the plaintiff in error was convicted. In conformity with the view herein expressed the judgment is corrected so as to fix the term of the plaintiff in error's imprisonment in the penitentiary at a minimum provided by law for voluntary manslaughter as shown by Code, Section 39–2410, T.C.A. Of course the correction of this judgment must and is done with the consent of the State. If the State does not consent then the case will be reversed and remanded for a new trial. All of this is done in conformity with the reasons and authority which are fully and ably set out in Forsha v. State, 183 Tenn. 604, 194 S.W.2d 463."

We believe and hold that the offense proven here is voluntary manslaughter, and amend the judgment accordingly. Sentence is set at two years, subject to acceptance by the State.

The second assignment of error alleges a denial of the right to a speedy trial.

This question was first injected into the record in an amendment to the motion for a new trial. It is argued that Hitchcox was indicted in July, 1969, and arraigned on the 28th of that month; that his case was first set for trial on November 14, 1969, but continued over the defendant's objection and reset for March 10, 1970. However, it is said that on February 20, 1970, that trial date was cancelled over defendant's objection; and on February 24, 1970, the case was reset for trial on May 28, 1970. However, on that date the case was again continued (at whose instance is not alleged) and reset for October 21, 1970, at which time it was tried. Apparently about fifteen months passed between indictment and trial.

Much of what is argued is outside the record. We do note that Mosley was indicted on July 23, 1969; tried on October 21, 1970 (on which date it was ordered "Bond to remain at $2,500"); that such a bond was made on October 22, 1970; and when his motion for a new trial was overruled on December 14, 1970, he was "allowed to remain on same bond". It appears, therefore, that he has been free on bond all, or substantially all, of the time since his indictment.

The Bill of Exceptions is silent as to the proceedings surrounding the various continuances. In that situation, our Supreme Court has held that it is presumed that good cause for the continuances existed. We quote from Raine v. State, 143 Tenn. 168, 226 S.W. 189, as follows:

"Nor do we think that the defendant could insist that the court below should have dismissed this case after the first term at which it was at issue, for the reason that no good cause was shown for its continuance under section 7155 of Thompson's Shannon's Code of Tennessee [now T.C.A. § 40–2102]. *In the absence of an affirmative showing to the contrary, which this record does not exhibit or reveal, it will be conclusively presumed that under this section of the Code good and sufficient cause was pre-*

*sented to the court below prior to ordering a criminal case continued.* Hobbs v. State, 121 Tenn. 413, 118 S.W. 262, 17 Ann.Cas. 177. [Emphasis supplied.]

\*　　\*　　\*　　\*　　\*　　\*

"In order to entitle one under indictment, and who is on bail, to discharge for failure to bring him to trial, he must have placed himself on record in the attitude of demanding a trial or resisting postponement; he cannot acquiesce or consent to postponements, and thereafter insist that his right to a speedy trial under the Constitution has been violated and denied.　(citing cases)"

In the state of this record, where no record complaint was made until the motion for a new trial, this assignment of error is overruled.

With the modification heretofore stated, we affirm this conviction.

WALKER, P. J., and O'BRIEN, J., concur.