**Fred Willie BRYANT, Plaintiff-in-Error,**

**v.**

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

Aug. 16, 1973.

Certiorari Denied by Supreme Court
Dec. 17, 1973.

Maness, Conley & Hayes, Union City, for plaintiff in error.

David M. Pack, Atty. Gen., Weldon B. White, Jr., Asst. Atty. Gen., Nashville, Fleming Hodges, Dist. Atty. Gen., Dyersburg, for defendant in error.

OLIVER, Judge.

## OPINION

Indicted for the first degree murder of Robert Cooper, Fred Willie Bryant has perfected an appeal in the nature of a writ of error to this Court contesting his Obion County Circuit Court voluntary manslaughter conviction for which he was sentenced to not less than two nor more than seven and one-half years in the penitentiary.

As he did in his motion for a new trial, by appropriate Assignments of Error here the defendant makes the usual assault on the sufficiency of the evidence, insisting that it preponderates against the verdict and in favor of his innocence, that there was no proof to establish the cause of death or that he killed the deceased, and that if he did kill him it was done in justifiable self-defense.

We summarize the material evidence. On January 19, 1971, the defendant and the deceased, who was drunk, became involved in an argument at Ezell Patterson's cafe, which was one house removed from his own home and to which he had gone for the purpose of borrowing a saw. The defendant's wife entered the cafe, got the saw and asked the defendant to come home and cut some wood. He explained his refusal to go by testifying that "figured I could laugh and talk for a while before I went back."

The argument apparently continued and both the defendant and the deceased drew knives, but Patterson made them put their knives away. A few minutes later, they began arguing again. Jessie Coble testified he heard Cooper say "You must got a grudge against me," to which the defendant replied affirmatively; that Cooper asked, "What is it?" and that the defendant answered, "You know what it is."

Patterson told the defendant and the deceased they would have to go outside to settle their grudge. The defendant went out first, and the deceased followed some two to five minutes later after removing his hat and coat. Patterson testified that when the deceased went out he had his hand in the same pocket where he kept his knife. Jim Calvin, as a defense witness, testified the deceased snapped his knife open before going outside.

Minutes later, the defendant stabbed the deceased and was pulled off of him by Lynell Dukes. The deceased asked Jessie Coble to get his hat and coat, started walking and then fell. After the arrival of the police, but before the ambulance got there, the defendant walked toward Policeman Gardner with his hands up and said, "I'm the one. I'm the man you're looking for. I did it." He told Gardner he had thrown the paring knife with which he stabbed the deceased over a house across the street. Not finding the knife, the officer later searched the defendant's home with his wife's permission and on top of the refrigerator found a paring knife with what appeared to be blood on it. After he was advised concerning his constitutional rights, the defendant identified that knife as the lethal weapon.

The only reference to the death of the deceased Cooper is found in the testimony of Officer Gardner:

"A . . . So about this time the ambulance arrived so we got Mr. Coop-

er in the ambulance and I escorted them to the hospital, and at the hospital is where Mr. Cooper was pronounced dead.

\*　\*　\*　\*　\*　\*

"Q All right, you accompanied the body of Robert Cooper to the `hospital, did you?

A Yes, sir.

Q That was to the Obion County General Hospital?

A Yes, sir.

Q And I believe you said he was pronounced dead there at the hospital.

A Yes, sir.

Q Do you know what doctor examined him?

A No, sir, I do not. I didn't go in the hospital."

The defendant testified that when he arrived at Patterson's cafe to borrow a saw, the deceased Cooper started an argument concerning the amount of money each of them could borrow from their employers; that Cooper had asked him about an old grudge and that he had replied, "If I had a grudge against him he know what it was"; that Cooper drew a knife, but Patterson made him put it away; that Cooper started arguing again, and Patterson told them that if they continued to argue they would have to leave; that Cooper put his hand in his pocket to get his knife; that as he started walking to the door Cooper began taking off his coat; that there is only one house between his home and the cafe, and he started walking toward his home; that when he was about three steps from the cafe porch he looked up and saw Cooper coming down the steps with an open knife in his hand; that he turned and Cooper struck him two or three times with the knife; that he tried to disarm Cooper, but his arm slipped; that he took a paring knife, which he had been using that morning to clean fish, from the bib of his over-

alls and stabbed Cooper, who then coughed and started bleeding; that as he started walking home he turned and saw Cooper walking in the opposite direction; that when he got home he put the knife on the stove and then went back outside; that he told Officer Gardner that he did it and that he threw the knife away; and that he lied because he was scared. He also testified that he was afraid of Cooper because he was drunk and armed and had previously stabbed a woman; that he had no intention of fighting Cooper and did not have a grudge against him; and that he was never on top of Cooper and was not pulled off of him by Dukes.

Lynell Dukes, called by the State as a rebuttal witness, testified that the defendant had the deceased Cooper down on the front porch of the cafe. He admitted that "In that little side room over there a while ago" he and Coble talked about the case.

With reference to the defendant's contention that there was no evidence showing that he killed the deceased Cooper, suffice it to say that this record shows the defendant admitted stabbing Cooper with a paring knife which he identified and which was filed as an exhibit at his trial, that Cooper collapsed minutes after the stabbing and was pronounced dead when taken to the hospital.

■ Although Officer Gardner did not appear to have direct personal knowledge of Cooper's death, since no defense objection was made to his above-quoted testimony on that subject, it is sufficient to support a finding that Cooper died shortly after the stabbing administered by the defendant and as the direct and proximate result thereof.

No principle of law is more firmly established than that when no objection to offered testimony or evidence is interposed, it may properly be considered and given its natural probative effect as if it were in law admissible. This Court will not consider an Assignment of Error based on the admission or exclusion of evidence unless

timely objection and exception was made in the trial court so as to give that court opportunity to consider the matter and take action deemed appropriate. Hancock v. State, 1 Tenn.Cr.App. 116, 430 S.W.2d 892; O'Neil v. State, 2 Tenn.Cr.App. 518, 455 S.W.2d 597; Crawford v. State, Tenn.Cr.App., 469 S.W.2d 524; Harless v. State, 189 Tenn. 419, 225 S.W.2d 258; Anderson v. State, 207 Tenn. 486, 341 S.W.2d 385.

■ In a prosecution for homicide, there need be no direct expert testimony as to cause of death, and death may be presumed to have been caused by apparent wounds, especially where there is no suggestion that deceased died from any other cause than the cause relied on by the State. Franklin v. State, 180 Tenn. 41, 171 S.W. 2d 281.

There is nothing whatever in this record to intimate or suggest that the death of the deceased was occasioned by natural causes, by accident, or by the deceased himself. Davis v. State, 1 Tenn.Cr.App. 479, 445 S. W.2d 933.

Voluntary manslaughter "is the unlawful and intentional killing by one of another, without malice, but upon a sudden heat or passion produced by provocation adequate to obscure the reason of an ordinary man, and thus negative malice. T.C.A. § [sic] 39–2409. Whitsett v. State, 201 Tenn. 317, 299 S.W.2d 2, 6; Nelson v. State, 65 Tenn. 418, 421." Smith v. State, 212 Tenn. 510, 370 S.W.2d 543.

In Cooper v. State, 210 Tenn. 63, 76, 356 S.W.2d 405, 411, the Court said:

"The general rule is that 'if a man kills another person, upon sudden heat produced by adequate provocation it is voluntary manslaughter'. There must be sudden heat from such provocation to negative malice. Young v. State, 30 Tenn. 200 and other cases.

"Again in Haile v. State, 31 Tenn. 248, and supported by the cases of Manier v. State, 65 Tenn. 595, and Seals v. State, 62 Tenn. 459, the Court said:—'If, upon a sudden quarrel, two persons fight, and one kills the other, this is voluntary manslaughter'.

"It is said in 40 C.J.S. Homicide § 48, Subsection (b), page 912, that 'homicide resulting from mutual combat or the excitement and heat of passion arising therefrom is voluntary manslaughter. There must be a mutual intention to fight, and, it has been held, deadly or dangerous weapons must be used.' Our Court in the case of Hunt v. State, 202 Tenn. 227, 303 S.W.2d 740, approved this statement."

See also: Mosley v. State, Tenn.Cr.App., 477 S.W.2d 246.

■ The defendant's defense of self-defense presented a question for the exclusive determination of the jury. McGill v. State, Tenn.Cr.App., 475 S.W.2d 223; Arterburn v. State, 216 Tenn. 240, 391 S.W. 2d 648; May v. State, 220 Tenn. 541, 420 S.W.2d 647. By its verdict the jury rejected the defendant's theory that he acted in self-defense in killing the deceased and has resolved that question against him.

Considered in the light of the oft-repeated rules binding upon us as an appellate court in reviewing criminal cases in which the sufficiency of the evidence is challenged, Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768; Webster v. State, 1 Tenn.Cr.App. 1, 425 S.W.2d 799; Hancock v. State, 1 Tenn.Cr.App. 116, 430 S.W.2d 892; Morelock v. State, 3 Tenn.Cr.App. 292, 460 S.W.2d 861; Chadwick v. State, 1 Tenn.Cr.App. 72, 429 S.W.2d 135; Phillips v. State, 2 Tenn.Cr.App. 609, 455 S.W.2d 637, in our judgment it cannot be said with any semblance of reason that it preponderates against the verdict and in favor of the defendant's innocence. Upon the material evidence above summarized, the jury was fully warranted in finding, as they obviously did, that as a result of their argument the defendant and the deceased agreed to settle their differences by mutual combat and that the defendant fatally

stabbed the deceased during the encounter. Under the law, that was voluntary manslaughter.

Another contention urged upon us here is that the trial court erred in permitting Lynell Dukes to testify in rebuttal, and in not permitting defense counsel to examine Dukes prior to his testimony before the jury, because he had discussed the case with Jessie Coble in violation of the court's order placing all the witnesses under the sequestration rule regarding the separate reception of testimony.

In the first place, whether to prohibit a witness from testifying who has disobeyed such an order of exclusion is a matter resting in the sound discretion of the trial court. Smith v. State, 72 Tenn. 428. Beyond that, however, a rule of the court excluding witnesses from the courtroom during the trial does not apply to rebuttal witnesses. Hughes v. State, 126 Tenn. 40, 148 S.W. 543; Cheek v. Fuller, 45 Tenn.App. 223, 322 S.W.2d 233. The court held in Nance v. State, 210 Tenn. 328, 358 S.W.2d 327 that the trial court did not abuse his discretion in permitting a witness to testify in rebuttal who had been barred from testifying for violation of a witness sequestration rule. The trial court committed no error in permitting Dukes to testify in rebuttal in this case.

There is no merit in the defendant's final Assignment that the court erred in charging the jury as to first and second degree murder. The indictment charged the defendant with first degree murder. It is the duty of the court to define and instruct the jury concerning all the grades of homicide embraced in the indictment, notwithstanding the court may feel that only one offense has been established, because it is the province of the jury to decide the degree of homicide committed, if any. Boyd v. State, Tenn.Cr.App., 475 S.W.2d 213.

Affirmed.

GALBREATH and DWYER, JJ., concur.