STATE OF NORTH CAROLINA v. CALVIN FAYE TERRY

No. 236A89

(Filed 12 June 1991)

1. **Criminal Law § 162 (NCI3d)— admissibility of evidence— necessity for objection at trial**

    Where defendant did not object at trial to any lack of proper authentication of photographs, he cannot on appeal assign error to the admissibility of the photographs on this ground.

    **Am Jur 2d, Evidence § 788.**

2. **Criminal Law § 34.7 (NCI3d)— other wrongs or acts—defaced photographs—relevance to show malice and motive**

    Evidence that defendant gave a murder victim defaced enlargements of photographs of the victim's wife four months before the victim was shot, considered with evidence that defendant returned the original photographs to the victim's wife just moments before the shooting, was relevant and admissible to show defendant's malice toward the victim and his wife, defendant's fixation on the victim's wife, and defendant's motive to kill the victim. The passage of four months did not render

the evidence irrelevant, and the probative value of this evidence to show malice was not outweighed by the potential for unfair prejudice. N.C.G.S. § 8C-1, Rules 403 and 404(b).

**Am Jur 2d, Evidence § 789; Homicide §§ 280, 283.**

**3. Homicide § 28.3 (NCI3d)— self-defense—aggressor instruction— supporting evidence**

The trial court's aggressor instruction on self-defense was supported by the testimony of the State's witnesses that defendant threatened the victim just seconds before shooting him—sufficiently close in time to the alleged crime to affect defendant's self-defense argument. Although defendant's testimony contradicted that of the State, the trial court properly allowed the jury to determine which testimony to believe.

**Am Jur 2d, Homicide §§ 519, 520.**

**4. Homicide § 25.2 (NCI3d)— premeditation and deliberation— brutal circumstances of killing—excessive force—instruction not plain error**

The trial court did not commit plain error in instructing jurors in a first degree murder prosecution that they could infer premeditation and deliberation from the "brutal or vicious circumstances of the killing" and from defendant's use of "grossly excessive force." Evidence that defendant fired a semi-automatic rifle, fully loaded with sixteen rounds, seven times at the victim, hitting his target twice, showed grossly excessive force. Assuming without deciding that the evidence did not support a "brutal or vicious" circumstance, such instruction did not constitute plain error in light of the other strong evidence of premeditation and deliberation.

**Am Jur 2d, Homicide § 501.**

APPEAL by defendant pursuant to N.C.G.S. § 7A-27, from a judgment imposing a sentence of life imprisonment entered by *Sitton, J.*, at the 1 March 1989 Criminal Session of Superior Court, RUTHERFORD County. Heard in the Supreme Court 13 March 1990.

*Lacy H. Thornburg, Attorney General, by Jane P. Gray, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant-appellant.*

STATE v. TERRY

[329 N.C. 191 (1991)]

EXUM, Chief Justice.

Defendant was tried noncapitally on a proper bill of indictment charging him with first-degree murder. He assigns error to several aspects of his trial, including instructions to the jury concerning premeditation and deliberation. We find no reversible error in this or any other assignment.

I.

This case arises from the fatal shooting by defendant of his first cousin, Howard Greene, on 16 March 1988. Defendant contends he shot Mr. Greene in self-defense. The State's evidence at trial tended to show the following:

More than ten years ago, defendant had expressed a romantic interest in the victim's wife, Betty Greene. After defendant's wife died in January 1988, he increased his attention toward Mrs. Greene, buying her gifts including a watch that the victim returned to defendant. Defendant visited the Greene house often and followed Mrs. Greene to work almost every day, despite the Greenes' request that he leave them alone. On 5 November 1987 the Greenes went to the Rutherford County Sheriff's Department and showed deputies defaced photographs of Mrs. Greene that defendant had given to Mr. Greene. Mrs. Greene expressed fear that defendant would mutilate her face. The photographs appeared to be enlargements of three smaller photographs, one of which Mrs. Greene had given to defendant's wife and two of which had been missing from the Greenes' home.

In December 1987 Mr. Greene moved to his sister's house. Defendant did not visit the Greene house when Mrs. Greene was living there alone but continued to follow her to work. Because of her fear of defendant, Mrs. Greene would take someone with her, usually her grown daughter and her mother, to pick up the Greenes' foster child at Ellenboro School.

On 16 March 1988 Mrs. Greene, accompanied by her daughter and her mother, drove to the school to pick up her foster daughter. On the way there, she saw Mr. Greene in his car at a store on Highway 74 and stopped to talk to him. Defendant drove by and held up to his windshield the original photographs of Mrs. Greene.

Mrs. Greene arrived at the school at about 2:30 p.m. and parked to wait for her foster daughter. Defendant then arrived in a new

truck and parked beside Mrs. Greene's car facing in the opposite direction. His face was painted with red, yellow, and green stripes. He handed her the original photographs, saying "I don't need these anymore." He also told her she "could have prevented everything." Defendant then drove away. Mr. Greene drove up and parked beside his wife's car, behind her and to the left. Defendant returned and parked so that his car and Mr. Greene's were facing each other and about 15 to 20 feet apart. Mr. Greene stepped out of his car. Mrs. Greene was looking toward the school when she heard gunshots and turned around to see her husband lying on the pavement beside his car.

Nancy Ann Greene Skipper, the Greenes' adult daughter, was seated in the passenger's side of the back seat of her mother's car. After her father pulled up, she heard defendant say to him, "Come on, you son of a bitch, if you get out I'll shoot you." She saw her father step out of his car and defendant raise a gun and fire through the windshield of his truck. She saw her father fall back beside his car. She could not see whether her father was carrying a weapon.

Mary Millwood, Mrs. Greene's mother, was seated in the front passenger's seat of her daughter's car. When defendant drove up and saw Mr. Greene, Millwood saw defendant move his mouth, apparently saying, "Come on, you son of a bitch." She saw Mr. Greene step out of his car and stand beside it and saw defendant fire a gun several times from inside his truck. The night before, defendant had called Millwood and said, "I'm going to Hickory, Granny. I'm going to get a gun. I'm going to kill Howard tomorrow."

Robert Billingsley arrived at Ellenboro School to pick up his children at approximately 2:35 p.m. the day of the shooting. As he parked, he heard gunshots and saw Mr. Greene falling to the ground beside his car door. Billingsley then heard a motor starting and saw defendant back his truck away from the scene, turn and speed down a road. Billingsley ran to Mr. Greene and saw a knife lying by his feet.

Deputy Sheriff R. H. Epley arrived at the scene at 2:53 p.m. and found Greene's body beside his car. Three pocketknives were on the body and Greene's vehicle contained one knife in a sheath, an empty sheath, and some bullets.

An autopsy revealed that Greene sustained two .22 caliber gunshot wounds, one to the mouth and neck and a fatal wound to the chest. Police found two .22 caliber bullets in a nearby house and noticed what appeared to be two other bullet marks on the house. Police found seven spent .22 caliber cartridges in defendant's truck.

From December 1987 to within weeks of the shooting, defendant had threatened to shoot Greene. Defendant told Hazel Greene, the victim's sister-in-law, that Greene had caused him to spend his children's Christmas money by bringing him to court on an assault charge. Defendant also told her he had shown Greene a pair of Mrs. Greene's panties to aggravate him.

Cathy Mathis, Mrs. Greene's sister-in-law, saw defendant outside a store in Ellenboro two days before the shooting. Defendant said, "If somebody don't do something about Howard Greene, I'm going to kill him." Defendant showed Mathis the watch he had bought Mrs. Greene and told her that his truck and insurance proceeds would go to Mrs. Greene if anything happened to him.

Jean Harris saw defendant at approximately 1:45 p.m. on 16 March 1988, less than two hours before the shooting. Defendant showed her his new truck, and asked, "Have you seen what I've got inside?" Harris looked and saw a long gun on the seat.

Paul Honeycutt and Claron Morehead were working at Honeycutt's Grocery on 16 March 1988 when defendant stopped to buy gas just before 3 p.m. Defendant had colored paint on the sides of his face. Honeycutt asked defendant if he was wearing "war paint," and defendant responded, "yeah."

Defendant testified on his own behalf to the following:

Defendant was never in love with Betty Greene. He damaged the enlarged photographs of her when he accidentally spilled liquid bleach on them. Six months before the shooting, Mr. Greene began to threaten him, saying "you're dead meat" every time defendant would visit or telephone the Greene home. The day before the shooting, defendant saw a pistol lying in Mr. Greene's car. Mrs. Greene had told him that her husband was going to kill them both. Defendant knew that Mr. Greene carried knives.

On 16 March 1988 defendant planned to return originals of the photographs of Mrs. Greene and held them up to show her

that he had them as he passed her car on the highway. He stopped when he saw her at the school and offered them to her. Mr. Greene drove up, jumped out of his car and said, "Come over here, you're dead meat." Mr. Greene went back to his car and turned around toward defendant's truck a second time as though he were pulling the "handle" back on a gun. Defendant shot Mr. Greene in self-defense.

On cross-examination, defendant conceded he had pled guilty on 19 February 1988 to charges of threatening to kill Mr. Greene; assaulting Jerry Greene, Mr. Greene's son, with a deadly weapon; and intimidating a witness. Defendant denied making the threat on Mr. Greene's life and said he pled guilty because Mrs. Greene was upset about having to appear in court and "tell lies." Defendant admitted being convicted in November 1987 of communicating threats to Jerry Greene.

## II.

Defendant first contends the trial court committed reversible error by admitting irrelevant and prejudicial evidence of defendant's character not proper for the jury's consideration under the North Carolina Rules of Evidence.

This assignment of error involves the propriety of introducing certain photographs and testimony about the photographs into evidence. The trial court, over objection, allowed Mrs. Greene to testify that she and her husband visited the Rutherford County Sheriff's Department on 5 November 1987 and showed a deputy enlarged photographs of her that had been defaced. The trial court sustained objection to evidence that the Greenes procured a warrant against defendant for communicating a threat against Mr. Greene but allowed admission of the photographs for the jury's perusal.

[1] Defendant contends the defaced photographs were not properly authenticated. Mrs. Greene identified the photographs as those defendant gave to Mr. Greene. Defendant did not object at trial to any lack of proper authentication; therefore he cannot on appeal assign error to the admissibility of the photographs on this ground. *State v. Baize*, 71 N.C. App. 521, 526, 323 S.E.2d 36, 39 (1984), *disc. rev. denied*, 313 N.C. 174, 326 S.E.2d 33 (1985); *State v. Covington*, 34 N.C. App. 457, 462, 238 S.E.2d 794, 798-99 (1977), *disc. rev. denied*, 294 N.C. 184, 241 S.E.2d 519 (1978).

[2]  Defendant also contends the photographs and Mrs. Greene's testimony about them were inadmissible character evidence not properly related to the trial. Rule 404(b) of the North Carolina Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (1988).

Evidence that defendant had given Mr. Greene the defaced photographic enlargements tended to show defendant's malice toward the Greenes, defendant's fixation on Mrs. Greene, and defendant's motive to kill Mr. Greene. This evidence was relevant because it involved prior malicious behavior toward the very person defendant was accused of murdering. Cf. State v. Spruill, 320 N.C. 688, 693, 360 S.E.2d 667, 669 (1987) (in murder trial, evidence that defendant had assaulted victim in the past was admissible to prove malice). Evidence that defendant presented the defaced enlarged photographs to Mr. Greene some four months before the shooting, considered with evidence that defendant returned the original photographs to Mrs. Greene just moments before the shooting, tended to show that defendant harbored a bizarre preoccupation with the Greenes during the time between those events.

Defendant argues that because, according to the State's evidence, he gave the defaced photographs to Mr. Greene more than four months before the shooting, the evidence regarding the photographs was too remote to be relevant. We think the passage of four months did not render this evidence irrelevant. In State v. Boyd, 321 N.C. 574, 576, 364 S.E.2d 118, 119-20 (1988), we upheld the introduction of evidence that within twelve months before an alleged rape of a child in a bunk bed, defendant was found naked in the same bunk bed with another child. Both children had been left in defendant's custody. Evidence of the prior incident was admissible to show a common plan or intent to take sexual advantage of a child left in defendant's custody.

Defendant also contends the photographs and testimony regarding them were prohibited by Rule 403. We explained in Boyd

that "the ultimate test for determining whether such evidence is admissible is whether the incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1. Rule 403." *Boyd,* 321 N.C. at 576, 364 S.E.2d at 119. The defaced photographs given to Mr. Greene by defendant, considered with the original photographs defendant gave to Mrs. Greene moments before the shooting, were important, highly probative evidence for the State. As we have already observed, this evidence tended to show defendant's hostility toward the victim and his bizarre preoccupation with the victim's wife during the four months immediately before the shooting. The probative value of this evidence to show malice was not outweighed by the potential for unfair prejudice. It was not admitted in violation of Rule 403.

This assignment of error is overruled.

[3] Defendant next contends he is entitled to a new trial because the trial court improperly instructed jurors that defendant could not be acquitted on the ground of self-defense if he was the aggressor in the fight in which he killed Mr. Greene. Defendant argues that the instruction was error because no evidence supported the theory that he provoked the fatal confrontation.

The trial court instructed jurors as follows:

The defendant would not be guilty of any murder or manslaughter if he acted in self-defense as I have just defined it to be, and if he was not the aggressor in bringing on the fight, and did not use excessive force under the circumstances. If the defendant voluntarily and without provocation entered the fight, he would be considered the aggressor unless he thereafter attempted to abandon the fight and gave notice to the deceased that he was doing so.

One enters a fight voluntarily if he uses toward his opponent abusive language, which considering all of the circumstances, is calculated and intended to bring on a fight.

The trial court restated these qualifications on the self-defense claim several times during instructions to the jury. Defendant did not object to the instruction at any time during trial. Defendant cannot obtain relief, therefore, without showing plain error. N.C. R. App. P. 10(b)(2); *State v. Odom,* 307 N.C. 655, 300 S.E.2d 375

(1983). We conclude that the trial court's instruction was proper even under the regular standard of error.

Defendant argues that the aggressor instruction on self- defense was improper because neither the State's evidence nor the defendant's evidence, considered independent of the other, supported the theories of both self-defense and aggression by defendant.

Defendant compares this case to *State v. Miller*, 223 N.C. 184, 25 S.E.2d 623 (1943). In *Miller* none of the evidence supported an aggressor instruction. The evidence showed that defendants and the victims traded blows in a fight that ceased a half hour before defendants fatally shot the victims. Defendants testified that after the fist fight they returned to their barn and were working there when the victims approached and began shooting, requiring defendants to return fire in self-defense. Witnesses for the State testified that the victims were walking through defendants' property when defendants, without provocation, shot them. This Court held that the trial court erred by instructing jurors that in order to act in self-defense, defendants had to have abandoned the earlier fight and notified the victims of their abandonment. This instruction in *Miller* was erroneous because the testimony of all parties showed that the fist fight was too remote in time from the shooting to impact on the self-defense theory.

This case differs from *Miller*. Here, the State's witnesses testified defendant threatened Mr. Greene just seconds before the shooting — sufficiently close in time to the alleged crime to affect defendant's self-defense argument. Defendant disputed this evidence, testifying that he shot Mr. Greene in self-defense after Mr. Greene provoked him. Although defendant's evidence does not support the aggressor instruction, the State's evidence supports it. By instructing jurors on the aggressor qualification, the trial court allowed the triers of fact to determine which testimony to believe. Not only was this not plain error, it was not error at all.

[4] Defendant next contends the trial court committed plain error by instructing jurors that they could infer premeditation and deliberation from the "brutal or vicious circumstances of the killing" and from defendant's use of "grossly excessive force."

The trial court instructed jurors as follows:

Neither premeditation nor deliberation are usually susceptible of direct proof. They may be proved by circumstances from

**STATE v. TERRY**

[329 N.C. 191 (1991)]

which they may be inferred, such as lack of provocation by the victim, conduct of the defendant before, during and after the killing, threats and declarations of the defendant, use of grossly excessive force . . . . You may also consider brutal or vicious circumstances of the killing. You may also consider the manner in which or means by which the killing was done.

Defendant did not object to this instruction at trial. Any defect in the instruction, therefore, must rise to the level of plain error for defendant to be entitled to relief on appeal. N.C. R. App. P. (10)(b)(2); *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983).

Defendant relies on *State v. Buchanan*, 287 N.C. 408, 215 S.E.2d 80 (1975), a capital case in which we held it was prejudicial error to instruct jurors that they could infer premeditation and deliberation from the "dealing of lethal blows after the deceased has been felled and rendered helpless" and the "vicious and brutal slaying of a human being." In *Buchanan* the defendant, having found the victim and two others stealing firewood, told the victim to drop the wood if he did not want his brains blown out. As the victim dropped the wood, the defendant shot him once and told the others to leave if they did not want to be shot, too. The defendant then moved his truck to allow the victim's companions to transport him to a hospital. This Court held that the evidence did not suggest that the defendant had dealt lethal blows after the victim was felled and did not show a " 'vicious and brutal' killing in the sense those terms are usually employed." 287 N.C. at 422, 215 S.E.2d at 88. The evidence showed that the defendant and the victim had been friendly before the day of the shooting.*

Unlike *Buchanan* there is here evidence of defendant's use of grossly excessive force. He fired a semi-automatic rifle, fully loaded with sixteen rounds, seven times at the victim, hitting his target twice. This is enough to show grossly excessive force. *State v. Shepherd*, 288 N.C. 346, 218 S.E.2d 176 (1975) (grossly excessive

---

* *Buchanan* was a capital case in which the Court noted the unassigned instructional error on its own motion:

If this were not a capital case, then defendant's conviction would stand since we can find no error in the assignments brought forward. However, since this is a capital case, and in accord with the well-settled practice of this Court, we have elected to consider *ex mero motu* certain portions of the trial court's charge.

287 N.C. at 419, 215 S.E.2d at 87.

STATE v. TERRY

[329 N.C. 191 (1991)]

force shown by firing entire fourteen-round load of semi-automatic rifle at victim, four of which struck the victim in the back). Assuming without deciding that the evidence does not support a "brutal or vicious" circumstance instruction, and that such instruction was error, we are confident it did not rise to the level of plain error. "The plain error rule is applied only in rare cases where the error was so fundamental that it had a probable impact on the jury's verdict." *State v. Stevenson*, 328 N.C. 542, 548, 400 S.E.2d 396, 399 (1991); *accord State v. Black*, 328 N.C. 191, 200-01, 400 S.E.2d 398, 404 (1991); *State v. Sanderson*, 327 N.C. 397, 403, 394 S.E.2d 803, 806 (1990); *Odom*, 307 N.C. at 661, 300 S.E.2d at 378.

There was a plethora of other evidence in this case which supported a reasonable inference of premeditation and deliberation. The night before the shooting, defendant told Mary Millwood that he was going to get a gun and kill Mr. Greene the following day. Two days before the shooting, defendant told Cathy Mathis he was going to kill Mr. Greene. Two or three weeks before the shooting, defendant told Hazel Greene that he would kill Mr. Greene. The day of the shooting, defendant pointed out the gun in the cab of his truck to Jean Harris. Less than an hour before the shooting, defendant wore stripes of colored paint on his face and acknowledged to Paul Honeycutt that it was "war paint." Even if the instruction regarding a brutal and vicious killing was error, because of the other strong evidence of premeditation and deliberation, it is not probable that without this instruction the jury would have reached a different verdict more favorable to defendant. Thus defendant cannot show plain error.

For the foregoing reasons, we find defendant's trial to have been fairly and properly conducted by the able trial judge. The result on appeal is

No error.