STATE OF NORTH CAROLINA v. DAVID AMBROSE ODOM A/K/A DAWUD AL-AMIN SHABAZZ

No. 551A82

(Filed 8 March 1983)

**Criminal Law §§ 115.1, 163 — failure to object to instructions — adoption of "plain error" rule — no "plain error" in failure to charge on simple assault**

Rule of Appellate Procedure 10(b)(2) barred defendant from assigning as error the court's failure to instruct on the possible verdict of guilty of simple assault where defendant made no objection to the instructions at trial. However, the "plain error" rule as used by the federal courts pursuant to Rule 52(b) of the Federal Rules of Criminal Procedure is adopted by the court to apply to the "exceptional case where, after reviewing the entire record, it can be said the claimed error is a *'fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.'" There

was, however, no "plain error" mandating a new trial for the defendant who was convicted of attempted robbery with a firearm where the evidence, when considered as a whole, did not justify an instruction on the offense of simple assault.

BEFORE *Ferrell, Judge,* at the 3 May 1982 Criminal Session of Superior Court, MECKLENBURG County, the defendant, David Ambrose Odom, aka Dawud Al-Amin Shabazz, was convicted of attempted robbery with a firearm and sentenced to life imprisonment. The defendant appeals to the Supreme Court as a matter of right pursuant to G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Charles J. Murray, Special Deputy Attorney General for the State.*

*Adam Stein, Appellate Defender, by James H. Gold, Assistant Appellate Defender for defendant-appellant.*

MITCHELL, Justice.

The defendant contends that he should be granted a new trial due to the failure of the trial court to instruct the jury on the offense of simple assault. The defendant admits that he did not object to the instructions at trial and therefore waived his right to appeal on that ground. N.C.R. App. P. 10(b)(2). We agree with the defendant that the adoption of the "plain error" rule is appropriate in light of Rule 10(b)(2). While we adopt the "plain error" rule, when applying it to the defendant's case we find no "plain error" that would mandate a new trial.

The charges against the defendant arose out of an incident at the Galaxy Discount Beverage Store in Charlotte. William H. Streater testified that he owns the store and that he was operating it by himself between 10:00 and 10:30 a.m. on 25 April 1981. At that time Streater was also a patrol officer with the Charlotte Police Department. On the morning of 25 April 1981, Streater was in civilian clothes and was counting money when a man, later identified as the defendant, entered the store and purchased some beer. The defendant left, but immediately returned and purchased another item and left the store again. A moment later, the defendant returned and claimed that the drink machine outside of the store had taken his nickel. He asked for a nickel in exchange for five pennies. When Streater opened the register to

get the change, the defendant produced a gun and told Streater to "move back." The defendant then ordered Streater to get down on his knees and, when he was on one knee, the defendant put the gun to Streater's neck and pulled the trigger, but the gun did not fire.

At this point, Streater grabbed at the gun and pushed the defendant. When the defendant fell back, Streater saw him raise his gun. Streater drew his own gun and fired at the defendant who was on the other side of the counter. The two men exchanged gunfire and finally Streater heard the footsteps of a person running out the door. Streater thought that he had hit the defendant with one of his shots, but he was not positive. A small amount of blood was found in the front of the store where the defendant was during the gunfire exchange.

Darryl Bernard, age fourteen, helped Streater work around the store. He was riding his bicycle to the store on 25 April 1981 when he heard someone hollering. He looked in the back door of the store and saw the defendant running out of the front door to a green car which appeared to be waiting. Bernard saw a gun in the defendant's hand. When Bernard entered the store he saw Streater who also had a gun in his hand.

Estella Blackwell was in the beauty salon adjacent to the Galaxy Discount Beverage Store on 25 April 1981. She heard two loud noises and then two or three shots from the beverage store. She and the other patrons got down on the floor and she saw someone get into a green Chevrolet and drive off. She called out the number from the license plate on the car to someone else in the store who recorded the number. She later identified the car that the defendant had rented and the police had impounded as the same car that she saw leaving the store after the shootout.

The police officers investigating the shooting found five bullets at the scene. Two of the bullets were taken from the wall of the building, including the wall adjoining the beauty salon. Later that evening, Streater discovered another bullet that had not been found in the initial search. The police examined Streater's gun and determined that it contained four spent cartridges and two live rounds. Investigating officers also discovered some blood on the floor near the ice cream cooler. The green car was searched and a bloody washcloth was found inside.

The State also presented evidence that a nearby Handy Pantry Food Store was robbed on 12 April 1981 by a man identified as the defendant.

The defendant testified on his own behalf. On the morning of 25 April 1981 he had an argument with his wife. He was driving a rented car because he was having problems with his own car. He decided to stop at the Galaxy Discount Beverage Store to buy a soft drink from the machine outside the store. When he put some coins in the machine, he did not get a drink or change. Frustrated, he pushed the machine against the wall. The man in the store, Streater, yelled, "Nigger, don't tear that box up." The defendant continued to push the machine and Streater came out of the store. Streater jerked the defendant around and the defendant hit him. The two men exchanged blows and Streater produced a gun from his pocket and fired at the defendant who took cover. Streater then told the defendant to come out because he was a police officer. Streater fired a few more shots and the defendant ran to his car, which he had left running, and drove off.

The defendant testified that he did not own a gun and that he did not have a weapon with him when he was at the store on 25 April 1981. He was not hit by any of the bullets and he testified that he felt that both he and Streater had overreacted. Following the encounter at the store, the defendant parked his car and went to play basketball. The defendant noticed police cars around his car and walked to his mother's house and borrowed her car. He drove to the bus station and called his wife who told him not to come home because "[t]hey say they are going to kill you." Following his conversation with his wife, the defendant got on a bus and left for New York.

The defendant admitted that he had been convicted of armed robbery about twenty years ago when he was in his early twenties. He had also been convicted of possession of heroin, disorderly conduct, assault on a police officer, breaking and entering, theft by taking and larceny. He had been convicted of common law robbery about one month before his trial. He was also convicted of the felony of possession of a firearm while he was in New York.

The defendant presented no other witnesses.

The defendant's only assignment of error is the failure of the trial court to instruct the jury on the misdemeanor of simple

assault as well as the felony of attempted robbery with a firearm. The defendant did not submit a request for an instruction on simple assault nor did he object to the instructions as given. Assuming, without deciding, that simple assault is a lesser included offense of attempted robbery with a firearm,[1] we nevertheless find no error in the case *sub judice* that would require a new trial. We have held that "[w]hen there is conflicting evidence of the essential elements of the greater crime and evidence of a lesser included offense, the trial judge must instruct on the lesser included offense even where there is no specific request for such instruction." *State v. Brown,* 300 N.C. 41, 50, 265 S.E. 2d 191, 197 (1980). However, that rule was recently altered by an amendment to the North Carolina Rules of Appellate Procedure. Rule 10(b)(2) now provides:

> No party may assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection; provided, that opportunity was given to the party to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury.

The defendant admits that no objection to the instructions was made at trial and therefore Rule 10(b)(2) bars his assigning as error the court's failure to instruct on the possible verdict of guilty of simple assault. The defendant, however, urges this Court to adopt the "plain error" rule to allow for review of some assignments of error normally barred by waiver rules such as Rule 10(b)(2).

---

1. Whether a criminal offense is a lesser included offense of a greater crime is determined definitionally, not factually. "If the lesser crime has an essential element which is not completely covered by the greater crime, it is not a lesser included offense." *State v. Weaver,* 306 N.C. 629, 635, 295 S.E. 2d 375, 379 (1982). While this Court has held that the crime of robbery with a firearm includes assault, *State v. Hicks,* 241 N.C. 156, 84 S.E. 2d 545 (1954), there is a question as to whether the definition of *attempted* robbery with a firearm includes all of the essential elements of simple assault. *Compare, State v. Moore,* 279 N.C. 455, 183 S.E. 2d 546 (1971) (fear not an element of attempted robbery); *and State v. Price,* 280 N.C. 154, 184 S.E. 2d 866 (1971) (definition of attempt); *with, State v. Allen,* 245 N.C. 185, 95 S.E. 2d 526 (1956) (definition of assault).

Rule 30 of the Federal Rules of Criminal Procedure is virtually the same as North Carolina's Rule 10(b)(2). The "plain error" rule is used by the federal courts pursuant to Rule 52(b) of the Federal Rules of Criminal Procedure which states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule, as interpreted by several federal courts, is defined as follows:

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*United States v. McCaskill,* 676 F. 2d 995, 1002 (4th Cir. 1982) (footnotes omitted) (emphasis in original); *see also* 3A Wright, Federal Practice and Procedure: Criminal 2d § 856 (1982). Acknowledging the potential harshness of Rule 10(b)(2), we adopt the "plain error" rule as quoted above. We note that the term "plain error" does not simply mean obvious or apparent error, but rather has the meaning given it by the court in *McCaskill.*

The adoption of the "plain error" rule does not mean that every failure to give a proper instruction mandates reversal regardless of the defendant's failure to object at trial. To hold so would negate Rule 10(b)(2) which is not the intent or purpose of the "plain error" rule. *See United States v. Ostendorff,* 371 F. 2d 729 (4th Cir.), *cert. denied,* 386 U.S. 982, 18 L.Ed. 2d 229, 87 S.Ct. 1286 (1967). The purpose of Rule 10(b)(2) is to encourage the parties to inform the trial court of errors in its instructions so that it can correct the instructions and cure any potential errors before the jury deliberates on the case and thereby eliminate the need for a new trial. Indeed, even when the "plain error" rule is ap-

plied,"[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe,* 431 U.S. 145, 154, 52 L.Ed. 2d 203, 212, 97 S.Ct. 1730, 1736 (1977).

In deciding whether a defect in the jury instruction constitutes "plain error," the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt. *United States v. Jackson,* 569 F. 2d 1003 (7th Cir.), *cert. denied,* 437 U.S. 907, 57 L.Ed. 2d 1137, 98 S.Ct. 3096 (1978). In the present case, a review of the whole record reveals no "plain error" mandating a new trial for the defendant. The State presented evidence of the victim of the robbery who testified that the defendant demanded money, put a gun to the victim's throat and pulled the trigger and exchanged gunfire with the victim before fleeing. This testimony was corroborated by another witness who saw both the defendant and the victim with guns in their hands, a witness who heard several gunshots and investigative police officers who found fragments of five bullets and who determined that the victim's gun had been fired four times.

The defendant's evidence consisted solely of his own uncorroborated testimony. He did not deny being present at the store and fighting with the victim. He testifed, however, that he had never owned a firearm and that he did not have a gun and did not shoot at the victim on 25 April 1981. His testimony was not only contradicted by the witnesses for the State, he was also impeached by his considerable past criminal record, which included convictions for armed robbery, common law robbery and possession of a firearm. The defendant's flight from North Carolina to New York following the incident was also admissible as evidence of the defendant's guilt. *State v. Self,* 280 N.C. 665, 187 S.E. 2d 93 (1972). Moreover, the circumstances of the incident and the defendant's action following the shootout, according to the defendant's testimony, do not lend credibility to his version of the encounter. The State's evidence indicated that the defendant had been wounded during the exchange of gunfire at the store. There was blood in the store and a bloody washcloth was found a short time later in the defendant's car. According to the defendant's own testimony he had been shot at several times by the store-owner. Yet, following this encounter, according to the defendant

he simply went to play basketball, then borrowed his mother's car and drove to the bus station when he saw the police around his car. He then boarded a bus for New York when his wife told him "they" were going to kill him.

Prior to the trial court's charge to the jury, the defendant submitted twelve "Proposed Additional Jury Instructions," none of which contained a request for an instruction on simple assault. Finally, following the charge to the jury, the defendant answered in the negative when asked by the court if he had any further requests.

Upon the record as a whole, we find no "plain error" in the defendant's trial.

No error.