STATE OF NORTH CAROLINA v. ERNEST LEON MYERS

No. 8428SC572

(Filed 2 April 1985)

1. Criminal Law § 33.3 — admission of irrelevant testimony contradicting part of defendant's statement — weight of other evidence — no prejudice

Although testimony which contradicted defendant's statement of his whereabouts on the morning of 21 February 1975 was irrelevant because the murder occurred in the afternoon, the testimony tending to establish defendant's guilt was so strong that there was no reasonable possibility that a different result would have been reached had the testimony been excluded. G.S. 15A-1443(a) (1983).

2. Criminal Law § 113.9 — failure to object to jury instruction at trial — issue waived

Defendant could not raise on appeal the issue of the court's instruction on irrelevant evidence contradicting his statement of his whereabouts because he did not object to the instruction at the instruction conference or after it was given. His pretrial motion in limine to suppress the relevant evidence and his objections at the time of admission were not sufficient to bring the jury

charge before the Court of Appeals; furthermore, the Supreme Court's dicta in a prior appeal characterizing the evidence as completely irrelevant did not dictate that the instruction was plain error. Rule of App. Procedure 10(b)(2).

**3. Criminal Law § 15.1— change of venue for pretrial publicity denied—no error**

There was no abuse of discretion in the denial of defendant's motion for a change of venue where the radio broadcasts and newspaper article on which the motion was based were factually informative and patently uninflammatory or were not included in the record on appeal; where several prospective jurors had heard or read about the case when it was tried in 1975, but only two had heard the radio broadcasts or had seen something on t.v.; and where defendant removed those who demonstrated a modicum of knowledge about the case. G.S. 15A-957.

**4. Criminal Law § 102.6— prosecutor's argument not improper in context of evidence**

Placing the prosecutor's argument in the context of the evidence produced at trial, there was no abuse of discretion in the denial of defendant's objection to the portion of the argument in which the prosecutor contended that there was no evidence that someone else committed the crime. Moreover, those portions of the prosecutor's arguments not objected to at trial did not rise to the level of gross impropriety.

Judge BECTON dissenting.

APPEAL by defendant from *Howell, Judge*. Judgment entered 14 November 1983 in BUNCOMBE County Superior Court. Heard in the Court of Appeals 8 February 1985.

This appeal arises from a new trial granted to defendant by our supreme court in *State v. Myers*, 309 N.C. 78, 305 S.E. 2d 506 (1983). At retrial, defendant was again tried for the first degree murder of Gillia Dianne Hennessee on 21 February 1975 and found guilty of second degree murder.

The state's evidence at retrial tended to show that in February 1975 Ms. Hennessee lived at 25 Howland Road, Rondette No. R-4, and was in the process of moving to another residence in Asheville. Ms. Hennessee was last seen alive by several individuals at approximately noon on 21 February. The following morning, Ms. Hennessee was found dead in her rondette.

Ms. Hennessee's body was clothed from the waist up and nude from the waist down. One-half of a brick was found beside the victim's legs and one-half of a brick was located above the victim's head; both halves covered with blood. Substantial amounts of blood were found in the bathroom sink, walls, and carpeting

throughout the rondette. An autopsy revealed that the victim had, among other comparatively minor injuries, multiple lacerations of the scalp ranging from one to five inches in length and fractures on both sides of the skull, including the base of the skull. Fragments of brick were found in one laceration. A foreign fiber was found in the victim's lungs, suggesting that some material had been firmly applied over the victim's nose or mouth, or both, approximately fifteen minutes before death. There was no evidence that Ms. Hennessee had been sexually assaulted. None of the physical evidence found at the scene and analyzed by the State Bureau of Investigation suggested defendant's presence at the rondette.

Alphonzo Pearcy, an employee of the Asheville City Street Department, testified that he had met defendant at a restaurant in Asheville at approximately noon on 21 February 1975. Defendant asked Pearcy if he knew the present whereabouts of Harry McQueen, which Pearcy did, and they drove to McQueen's rondette on Howland Road, in defendant's gold colored Toyota automobile. McQueen was not at home and both individuals left.

Mary Ellen Toreson testified that she lived on Howland Road on 21 February 1975. At approximately 2:00 p.m. she saw a black male, in his late twenties, medium height and build, with a short-cropped afro hairstyle park in front of the rondettes. Toreson's description generally matched that of defendant. The black male was driving a foreign model car, yellow-brown color, with a hatchback. Later, Mrs. Toreson saw the black male and Ms. Hennessee standing in the back of the latter's rondette talking. After 3:00 p.m., Mrs. Toreson heard an abrupt, loud noise from the victim's rondette which she described like a desk being moved, and the drapes were briefly parted.

Myra Allen, a resident occupying a rondette on Howland Road, testified that on 21 February 1975 she walked past Ms. Hennessee's residence at approximately 4:30 p.m. She identified defendant as the man she saw leaving from the door of the victim's rondette. Defendant exhibited no unusual behavior. On cross-examination, Ms. Allen admitted that in a written statement she had given to the police several months after Ms. Hennessee's death, she had stated that defendant was quickly leaving the victim's residence.

Delores Poore and Asheville City Chief of Police Fred Hensley testified that Ms. Allen had separately told them that she had seen defendant leaving the victim's rondette.

Johnny McConneyhead testified that while an inmate at Craggy State Prison he met defendant, who was also an inmate. In October 1977, defendant, David Lee and McConneyhead had a conversation in which defendant told him Ms. Hennessee, a nurse, had been getting drugs for defendant from the hospital at which she worked. When Ms. Hennessee refused to obtain more drugs for him, defendant raped her then beat her to death with a brick.

Robert Smith testified that he was a prisoner in Craggy State Prison and knew defendant. In 1978, Smith had a conversation with defendant in which defendant related that Ms. Hennessee was to have obtained drugs for him, she had not done so, and he "freaked out" and he beat her with a brick. Six or seven months later Smith and defendant again discussed the matter, defendant giving essentially the same version of Ms. Hennessee's death. On cross-examination, Smith admitted that he had given a statement to the police in which he had stated that defendant had recounted that he had blood on his clothes after the beating and he had burned them in a house that was either on Madison Avenue or Magnolia, in the house of Paulette Briggs, and that defendant claimed to have driven a Fleetwood Cadillac on the day of the murder. Smith admitted to having a close friendship with one Harry McQueen, deceased at the time of trial, from whom defendant had stolen drugs. Smith had also told police that he had had a conversation with Ms. Allen who told him that she had seen the victim's door partially open on the date of the murder, but she had not paid any attention to it. She may have said something about seeing defendant at the rondette, but she felt that defendant had killed Ms. Hennessee.

Ikey Noah, an inmate at Craggy State Prison, overheard a conversation between defendant and an unidentified female visitor in which the latter stated she felt someone was following her. Defendant asked if she felt it was because of the nurse, and she stated that she thought so. Defendant told the visitor not to worry because he would be released soon and he was leaving.

Dianne Lloyd testified that she met defendant after February 1975 at the home of a friend and overheard defendant state that

he had dressed up as a woman and killed a white woman up on the mountain by hitting her with a brick. Lloyd stated that she and defendant were taking drugs at the time he made the statement.

Billy C. Mathews, Special Agent of the State Bureau of Investigation, testified that defendant had given him a statement in July 1975. The substance of that statement' was that on 21 February 1975, defendant had been to Dr. Love's, a dentist, in the morning to have two teeth pulled and two filled. Later, Alphonzo Pearcy had requested defendant to take him to Harry McQueen's in exchange for $1. Pearcy had to show defendant where to go since he had never been to McQueen's and they left when they could not locate McQueen. Defendant denied having returned to Howland Road that afternoon, but he could not remember where he had been from his return until he had picked up his wife at her place of employment at 3:30 p.m. In September 1981, defendant was again questioned by authorities about his previous statement and defendant confirmed the truth of his first statement.

Dr. Love testified that defendant was not in his office on the morning of 21 February 1975, but was in his office for the first time on 24 March 1975 and he extracted only one tooth and filled no teeth.

Defendant offered no evidence.

Defendant was found guilty and sentenced to sixty years imprisonment.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Evelyn M. Coman, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Malcolm Ray Hunter, Jr., for defendant.*

WELLS, Judge.

Defendant brings forth three assignments of error contending that (1) the trial court improperly admitted irrelevant evidence impeaching defendant's exculpatory statement to the police and instructing the jury that it could use that evidence to find that defendant had a consciousness of guilt, (2) the trial court erred in denying defendant's motion for a change of venue, and (3)

the prosecutor's closing argument created reversible error. We find no error in defendant's trial.

[1]   Defendant first argues that the trial court erred in admitting Dr. Love's testimony that defendant was not in his office on the morning of 21 February 1975 which contradicted defendant's statement to investigating authorities that he had two teeth extracted and two filled on the morning of that date. Defendant contends that because the state's theory of Ms. Hennessee's murder was based on defendant returning to the victim's rondette at approximately 3:00 p.m. and leaving the rondette at approximately 4:30 p.m. contradiction of defendant's whereabouts on the morning of the homicide was irrelevant.

Our supreme court fully outlined the law of this state on showing consciousness of guilt by contradiction of an accused's statements in defendant's appeal from his first trial:

> It is established by our decisions that false, contradictory or conflicting statements made by an accused concerning the commission of a crime may be considered as a circumstance tending to reflect the mental processes of 'a person possessed of a guilty conscience seeking to divert suspicion and to exculpate [himself].' . . . The probative force of such evidence is that it tends to show consciousness of guilt. . . .
>
>      . . .
>
> Our research discloses that 'consciousness of guilt' may be established, *inter alia*, by evidence of flight on the part of an accused. We are of the opinion that the rules of law governing flight which show consciousness of guilt are equally applicable to evidence of falsehood. . . .
>
> In North Carolina, evidence of flight does not create a presumption of guilt but is some evidence which may be considered with other facts and circumstances in determining guilt. However, proof of flight, standing alone, is never sufficient to establish guilt. . . . Further, evidence of flight *may not* be considered as tending to show premeditation or deliberation. . . .
>
> In instant case, we find the challenged instruction erroneous because it permitted the jury to roam at will without

making it clear that the falsehood did not create a presumption of guilt or that, standing alone, such evidence was not sufficient to establish guilt. Neither did the trial judge inform the jury that such evidence could not be considered as tending to show premeditation and deliberation. Furthermore, the statements referred to in the instruction under scrutiny were completely irrelevant since the alleged falsehood referred to defendant's whereabouts during the morning hours of 21 February 1975 and all the evidence was to the effect that the crime occurred in the afternoon of that day.

*State v. Myers, supra* (citations omitted) (footnotes omitted) (emphasis in original). While the issue presented in *Myers* was the correctness of the trial court's instruction to the jury, we conclude for the purposes of the case before us that defendant's statement as to his appointment with Dr. Love on the morning of 21 February 1975 and the clearly contradictory evidence were irrelevant to the issue of defendant's guilt. Defense counsel repeatedly objected to admission of this evidence, based on the supreme court's holding in *Myers*.

Recognizing that defendant's statement as to his appointment with Dr. Love and Dr. Love's contradictory testimony were irrelevant, the question is whether defendant was so prejudiced by admission of the testimony that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C. Gen. Stat. § 15A-1443(a) (1983). Defendant's statements to investigating authorities were contradicted in three aspects; (1) his appointment with Dr. Love (contradicted by Dr. Love), (2) his statement that Alphonzo Pearcy had wanted to go to Harry McQueen's and the latter paid defendant $1 for taking him there (contradicted by Pearcy) and (3) he had not returned to the rondette on the afternoon of Ms. Hennessee's murder (contradicted by Toreson). Defendant does not contend that admission of the evidence of contradiction in the latter two areas was error. The evidence of defendant's whereabouts on the morning of 21 February 1975 was a relatively minor feature of the case against defendant. The evidence tending to establish defendant's guilt, especially the testimony of the four Craggy State Prison inmates, was so strong that the admission of the objected to evidence as to defendant's whereabouts on the morning of 21 February 1975 did not establish a

reasonable possibility that a different result would have been reached had such evidence been excluded. This assignment of error is overruled.

[2] Defendant argues that the trial court erred in instructing the jury that it could use the irrelevant evidence of defendant's contradicted statement as to his dental appointment to show a guilty conscience. The trial judge did instruct the jury that it could consider the evidence contradicting defendant's statements as to the dental appointment in the morning and defendant's activities in the afternoon. The rule in this state is that:

> No party may assign as error any portion of the jury charge . . . unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection; provided, that opportunity was given to the party to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury. . . .

Rule 10(b)(2) of the Rules of Appellate Procedure. The trial court held a recorded jury conference in which he specifically advised counsel of his intent to give an instruction on defendant's false, contradictory, or conflicting statements:

> The instruction probably will be something like this, in case it will help you, that the State has offered evidence which it contends tends to show that the Defendant made a statement which was false in whole or in part with regard to his whereabouts on February 21st, and that they may consider such evidence, if they believe it, in determining whether the combined circumstances amount to a show of consciousness of guilt; but even if they do believe it and believe it beyond a reasonable doubt, it creates no presumption of guilt, and in fact, standing alone, it is insufficient to establish guilt; and that it cannot, in all events, be considered with respect to the issue of premeditation and deliberation.

Defense counsel did not object to the proposed instruction during the instruction conference. The trial court instructed the jury as indicated, and defense counsel did not object to the instruction in an unrecorded conference held after the trial court instructed the jury. Having failed to timely object to the trial court's instruction, defendant is precluded from raising the issue on appeal.

In oral argument before this court, counsel asserted that defendant's pretrial motion *in limine* to suppress the irrelevant evidence and objections made at the time of admission were sufficient to bring the questioned jury charge before this court. We reject this argument as we can find no authority to support the position and Rule 10(b)(2) clearly negates the argument. Defendant also argued that our supreme court's dicta categorizing the contradictory evidence of defendant's whereabouts on 21 February as "completely irrelevant" dictated that the trial court, in instructing on the irrelevant evidence, committed plain error. Our supreme court has stated:

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *'fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has ' "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" ' or where the error is such as to 'seriously affect the fairness, integrity or public reputation of judicial proceedings' or where it can be fairly said 'the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.'

*State v. Odom,* 307 N.C. 655, 300 S.E. 2d 375 (1983) (quoting *United States v. McCaskill,* 676 F. 2d 995 (4th Cir.), *cert. denied,* 459 U.S. 1018 (1982) (footnotes omitted) (emphasis in original). The *Odom* court discussed the interplay of the plain error rule and Rule 10(b)(2) in the context of improper jury instructions and concluded '[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.' *Id.* (Quoting *Henderson v. Kibbe,* 431 U.S. 145 (1977).) We decline to invoke the "plain error" rule in this case, and this assignment is overruled.

[3] Defendant next argues that the trial court erred in denying his motion for a change of venue. He contends that the trial court applied an erroneous standard of review by concluding 'defendant has not shown that it is *impossible* for him to get a fair and impartial trial.' The trial court can grant a change of venue if "there

exists in the county in which the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial." N.C. Gen. Stat. § 15A-957 (1983). The motion for change of venue:

> [I]s addressed to the sound discretion of the trial court and its ruling thereon will not be disturbed absent a showing of abuse of discretion. . . .
>
>           . . .
>
>           . . . the burden of proving that a fair and impartial trial cannot be received due to pretrial publicity falls on the defendant. . . . [T]he United States Supreme Court held that due process mandates that criminal defendants receive a trial by an impartial jury free from outside influences. The Court also held that where there is a reasonable likelihood that prejudicial pretrial publicity will prevent a fair trial, the trial court should remove the case to another county . . .

*State v. Jerrett*, 309 N.C. 239, 307 S.E. 2d 339 (1983) (citations omitted).

Defendant based his motion on three radio news broadcasts concerning defendant's first trial and pending retrial aired by WWNC Radio on the morning of the retrial and one Asheville Citizen news story. We have carefully reviewed the contents of the radio broadcasts and find them to be factually informative and patently uninflammatory. The Asheville Citizen article was introduced into evidence but was not included in the record on appeal and, therefore, we have been unable to review it. The record before us does reveal that the article listed the names of witnesses from the first trial, recounted some of the facts presented in that trial, discussed the defendant's criminal record, and cited testimony given before the grand jury. Defense counsel argued that because the Asheville Citizen was known to be read throughout Buncombe County it would be "impossible" for defendant to receive a fair trial. The *voir dire* of the venire reveals that several prospective jurors had read or heard about the case in 1975, but only one individual had heard the WWNC radio broadcast and one potential juror had seen something on television. The record is equally clear that defendant removed those venire who demonstrated a modicum of knowledge about the case.

Based on the facts discussed above it is clear that defendant did not conclusively establish that he could not receive a fair and impartial trial in Buncombe County, and that the trial court did not abuse its discretion in denying defendant's motion. This assignment of error is overruled.

[4] Defendant's final argument is that the prosecutor's closing argument to the jury went beyond the record evidence, expressed personal belief as to the case, incorrectly argued that certain evidence was uncontradicted, and urged the jury to convict on a civic duty rather than on the evidence before them. Of the various portions of the prosecutor's argument to the jury to which defendant assigns error, defendant only objected to one argument at trial. When the defendant fails to object to the closing argument, thereby giving the trial court an opportunity to correct any error prior to jury deliberations, the "standard of review is one of gross impropriety." *State v. Craig and State v. Anthony*, 308 N.C. 446, 302 S.E. 2d 740, *cert. denied*, --- U.S. ---, 104 S.Ct. 263 (1983). We conclude from our review of those portions of the prosecutor's arguments not objected to at trial that they do not rise to the level of gross impropriety. Defense counsel did object to the following argument and was overruled by the trial court:

> I have no idea what Mr. Stoker is going to say. He might say Harry McQueen did it. Absolutely no evidence that Harry McQueen did this. In fact, Chief Hensley told you the investigation revealed that Harry McQueen was in Durham that day. It's easy to go after a man after he's dead. He wasn't even enough of a suspect in this case to submit his fingerprints to the S.B.I.

The trial transcript reveals that Chief of Police Hensley testified that his investigation disclosed that Harry McQueen was in Durham, he was not fingerprinted, while some other suspects in the killing were, and McQueen died prior to retrial. Placing the prosecutor's argument in context of the evidence produced at trial, we hold that the trial court did not abuse its discretion in overruling defendant's objection. *State v. Craig and State v. Anthony, supra; State v. Woods*, 56 N.C. App. 193, 287 S.E. 2d 431, *cert. denied*, 305 N.C. 592, 292 S.E. 2d 13 (1982).

We have thoroughly reviewed the record in this case and find that defendant received a fair trial in which we can find

No error.

Judge WHICHARD concurs.

Judge BECTON dissents.

Judge BECTON dissenting.

The majority correctly "conclude[s] . . . that defendant's statement as to his appointment with Dr. Love on the morning of 21 February 1975 and the clearly contradictory evidence were irrelevant to the issue of defendant's guilt." Ante p. 7. The language of *State v. Myers*, 309 N.C. 78, 305 S.E. 2d 506 (1983) compels that conclusion and the further conclusion that a "consciousness of guilt" instruction should not be given unless the "false, contradictory or conflicting statements made by an accused *[concern] the commission of a crime.* . . ." *Id.* at 86, 305 S.E. 2d at 511.

In this case, defense counsel, in anticipation of the State's attempt to present the same evidence at Myers' new trial, filed a motion *in limine* to prohibit the State from presenting irrelevant evidence of defendant's whereabouts during the morning hours of 21 February 1975. And, to use the majority's words, "[d]efense counsel repeatedly objected to admission of this evidence, based on the supreme court's holding in *Myers, supra.*" Ante p. 7. Considering defense counsel's efforts to keep the irrelevant evidence from the jury and the Supreme Court's opinion in *Myers*, which was available to the trial judge when he denied defendant's motion *in limine*, I believe defendant is entitled to a new trial. Unlike the majority, I am unable to conclude that there was a reasonable possibility that a different result would not have been reached. The trial court's instructions specifically invited the jury to infer "consciousness of guilt" if it found that defendant's statement about his whereabouts on the morning of 21 February 1975 was false.

And although defense counsel failed to object to the court's instructions to the jury on "consciousness of guilt," I believe that,

on the facts of this case, no objection was necessary since the trial court knew, on the basis of the motion *in limine* and the arguments presented, that defendant objected to the admission of the irrelevant evidence and a consciousness of guilt instruction. Thus, the test is whether an objection to the court's instructions to the jury would have been a *pro forma* exception rather than a timely objection calling the court's attention to a matter it need consider. In any event, the plain error rule should be invoked in this case. *See State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983).

Based on the foregoing, defendant is entitled to a

New trial.