STATE v. FARRIOR

[117 N.C. App. 429 (1994)]

No error.

Judges JOHNSON and MARTIN concur.

---

STATE OF NORTH CAROLINA v. DONALD R. FARRIOR

No. 944SC21

(Filed 20 December 1994)

1. **Burglary and Unlawful Breakings § 141 (NCI4th)— constructive possession—instructions adequate**

   The trial court's instructions adequately informed the jury that it was not compelled to infer that defendant was aware of the presence of stolen articles in his car trunk and that he thus constructively possessed them, and the instructions adequately informed the jury that the State retained the burden of proof.

   **Am Jur 2d, Burglary § 72.**

   **What constitutes "constructive" possession of stolen property to establish requisite element of possession supporting offense of receiving stolen property. 30 ALR4th 488.**

2. **Criminal Law § 1284 (NCI4th)— habitual felon indictment—failure to allege underlying felony—fatal error**

   Defendant's indictment as a habitual felon was fatally flawed where it did not refer to any underlying felony with which defendant was currently charged.

   **Am Jur 2d, Habitual Criminals and Subsequent Offenders §§ 20, 21.**

Appeal by defendant from judgment entered 27 May 1993 by Judge J. Richard Parker in Onslow County Superior Court. Heard in the Court of Appeals 18 October 1994.

In December 1991, Cheryl Baker (hereinafter Baker) of Jacksonville, North Carolina, left her home to visit relatives for Christmas. When she returned to Jacksonville with her children, she found a note on her door from the Sheriff's Department stating that her house had been broken into and that items had been stolen. The series of events which led to the arrest of the defendant are as follows:

Michael Rochelle (hereinafter Rochelle), who was visiting his in-laws during Christmas 1991, was watching television in bed early in the morning on 22 December 1991 when he heard a car drive up to the intersection in front of his in-laws' house. He heard the car because it sounded as if it did not have a muffler or had a bad muffler. The car remained at the intersection for three to five minutes. The car drove away but returned approximately fifteen minutes later. When the engine was turned off, Rochelle went to see where the car was. As he walked out the back door, he saw the car pull out of Baker's driveway and noticed that it was "a cream color or light-colored car."

Rochelle then woke his mother-in-law, Beverly Wilkinson (hereinafter Wilkinson), to say that something was going on down the street. They waited for approximately twenty minutes, and then saw the car return. Rochelle saw two men approach the area of Baker's house. Rochelle could tell that both men were black, one was 5'8" or 5'9" and one was 6'2". Wilkinson saw the men when they returned from the direction of Baker's house and saw that they were carrying something large. Rochelle stepped outside and yelled, "Hey, what you got there?" When he did, both men ran. Wilkinson called the Sheriff's Department.

A deputy sheriff received the description of the car that Rochelle and Wilkinson had seen and at approximately 4:00 a.m., the deputy saw a vehicle matching the description. The vehicle was parked in front of a house not far from Baker's home and had a towel draped over the license plate. When other officers arrived, they felt the hood of the car and discovered that it was warm, indicating that someone had driven it within the last few hours. They then knocked on the door of the home and defendant eventually came to the door. Defendant consented to a search of the trunk. The trunk contained pillow cases full of items later determined to belong to Baker. Defendant declared that he did not know where the items came from and that he had not put the items in the trunk. Defendant accompanied the officers to the Sheriff's Department and told one of the deputies that he always left his keys in his car and that anyone could have come along and driven his car while he was asleep.

At trial, defendant presented evidence that he was with his fiance during the entire night of the break-in at the home of defendant's sister, Etta Farrior, (hereinafter Farrior). Defendant and Farrior's boyfriend, Larry Faison, (hereinafter Faison) lived in the home with Farrior. Faison testified that between 1:00 a.m. and 2:00 a.m. on 22

STATE v. FARRIOR

[117 N.C. App. 429 (1994)]

December 1991, he came home and saw the items in the front yard. He put them in defendant's trunk because he said that he thought the items belonged to Farrior's children.

The defendant was indicted 27 May 1992 for felonious breaking and entering, felonious larceny, and felonious possession of stolen goods. On 23 June 1992, defendant also was indicted as an habitual felon. The habitual felon indictment referred to three previous felony convictions which occurred in 1977, 1986, and 1988.

On 27 May 1993, the jury found the defendant guilty of felonious breaking and entering, felonious larceny, and felonious possession of stolen goods. Defendant then pled guilty to the habitual felon indictment. The trial court arrested judgment on the conviction of possession of stolen goods and sentenced defendant to consecutive terms of fifteen years for the convictions of felonious breaking and entering and felonious larceny.

Defendant appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General Jill Hickey, for the State.*

*Nora Henry Hargrove, for defendant-appellant Donald R. Farrior.*

EAGLES, Judge.

Defendant brings forward two assignments of error. After careful review, we remand for resentencing.

I.

[1] Defendant argues that the trial court erred by failing to instruct the jurors that they were not compelled to infer constructive possession of the stolen articles found in the vehicle merely because defendant exercised control over the vehicle. "A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict." N.C. R. App. P. 10(b)(2). Here, defendant neither requested the trial court to give a particular instruction on constructive possession nor objected to the instructions given. However, defendant argues that despite his failure to request a particular instruction or object to the instructions given, it was plain error for the court not to give the following instruction:

**STATE v. FARRIOR**

[117 N.C. App. 429 (1994)]

> A person has constructive possession of an article if he does not have it on his person, but is aware of its presence and has both the power and intent to control its disposition or use. A person's awareness of the presence of the article and his power and intent to control its disposition or use may be shown by direct evidence or may be inferred from the circumstances. If you find beyond a reasonable doubt that articles were found in a certain vehicle, that the defendant exercised control over that vehicle whether or not he owned it this would be a circumstance from which you may infer that the defendant was aware of the presence of the articles and had the power and intent to control their disposition or their use. You must understand that you are not compelled to infer that the defendant was aware of the presence of the articles.

The "plain error" rule provides that an appellate court may review an alleged error not preserved for appellate review if the error affects a substantial right. *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). However, our Supreme Court has emphasized that courts should apply the plain error rule "cautiously and only in the exceptional case where . . . it can be said that the claimed error is . . . so prejudicial . . . that justice cannot have been done." *Odom* at 660, 300 S.E.2d at 378, *quoting United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir. 1982), *cert. denied,* 459 U.S. 1018, 74 L.Ed.2d 513 (1982).

Here, the trial court instructed the jury as follows:

> A person has constructive possession of an article if he does not have it on his person, but is aware of its presence and has both the power and intent to control its disposition or use. A person's awareness of the presence of the article and his power and intent to control it's [sic] disposition or use may be shown by direct evidence or may be inferred from the circumstances. If you find beyond a reasonable doubt that articles were found in a certain vehicle, that the defendant exercised control over that vehicle whether or not he owned it this would be a circumstance from which you may infer that the defendant was aware of the presence of the articles and had the power and intent to control their disposition or use.

The trial court also instructed the jury that the State had to prove the defendant's guilt beyond a reasonable doubt. We find that the trial court's instructions adequately informed the jury that they were not compelled to infer that the defendant was aware of the presence of the articles and that the instructions adequately informed the jury

STATE v. FARRIOR

[117 N.C. App. 429 (1994)]

that the State retained the burden of proof. Accordingly, we hold that the trial court committed no "plain error." This assignment of error fails.

## II.

[2] Defendant also argues that he is entitled to have his plea of guilty to being an habitual felon set aside because the indictment failed to refer to any substantive felony for which the defendant was currently charged. We first determine whether this Court has jurisdiction to address defendant's argument. Pursuant to G.S. 15A-1444(a1), a defendant who has entered a plea of guilty to a felony is not entitled to appeal as a matter of right unless his sentence exceeds the presumptive term set by G.S. 15A-1340.4. However, he may petition this Court for review of the issue by writ of certiorari. Here, defendant petitioned this Court for writ of certiorari in his brief filed 23 February 1994. In our discretion we grant defendant's petition for writ of certiorari and will consider the assignments of error brought forward.

When the State charges a defendant as an habitual felon, the habitual felon indictment must refer to the underlying substantive felony. *State v. Hawkins*, 110 N.C. App. 837, 840, 431 S.E.2d 503, 506 (1993), *citing State v. Moore*, 102 N.C. App. 434, 438-39, 402 S.E.2d 435, 437 (1991). Otherwise, "the 'defendant [does] not have sufficient notice of [the] particular charge against him.' " *Hawkins* at 840, 431 S.E.2d at 506, *quoting Moore* at 438, 402 S.E.2d at 437.

Here, the habitual felon indictment did not refer to any underlying felony with which defendant was charged. Accordingly, defendant's indictment as an habitual offender was fatally flawed and the trial court erred in enhancing defendant's sentence on that basis. ("[Being] an habitual felon is a status rather than a crime, [so] the only reason for establishing that an accused is an habitual felon is to enhance the punishment which would otherwise be appropriate for the substantive felony which [the defendant] allegedly committed while in that status." *State v. Oakes*, 113 N.C. App. 332, 337, 438 S.E.2d 477, 480 (citation omitted), *review denied*, 336 N.C. 76, 445 S.E.2d 43 (1994)).

We vacate the judgment and remand this matter for resentencing in accordance with Chapter 15A of the North Carolina General Statutes. We note that "the State may elect . . . to try defendant as an habitual felon upon a subsequent indictment proper in form, and in accordance with procedures approved in *State v. Allen*, 292 N.C. 431, 233 S.E.2d 585 (1977)." *State v. Hawkins*, 110 N.C. App. 837, 843, 431

S.E.2d 503, 507 (1993). *(But cf. State v. Oakes,* 113 N.C. App. 332, 438 S.E.2d 477 (1994). When allowing the State to seek a second indictment alleging habitual felon status, "the critical issue is whether defendant had notice of the allegation of habitual felon status at the time of his plea to the underlying substantive felony charge." *Oakes* at 339, 438 S.E.2d at 481).

Vacated and remanded for resentencing.

Judge ORR concurs.

Judge McCRODDEN concurred prior to 15 December 1994.