An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-346

Filed 19 November 2025

Forsyth County, No. 22CR054835-330

STATE OF NORTH CAROLINA

v.

CHRISTOPHER EMANUEL GREEN, Defendant.

Appeal by defendant from judgment entered 9 August 2023 by Judge Craig Croom in Forsyth County Superior Court. Heard in the Court of Appeals 29 January 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Jason Caccamo, for the State-appellee.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Anne M. Gomez, for defendant-appellant.*

GORE, Judge.

This case arises from defendant's appeal of his convictions for assault on a female and misdemeanor sexual battery following a jury trial in Superior Court, Forsyth County. On appeal, defendant challenges the sufficiency of the evidence supporting the assault on a female conviction, the admission of certain testimony at

trial, and the trial court's denial of his motion to dismiss the charges. These issues are properly before this Court pursuant to N.C.G.S. § 7A-27(b). After careful review, we discern no error.

**I.**

On 18 June 2022, Nancy,[1] a 16-year-old, was working her shift at a Taco Bell in Winston-Salem, North Carolina, where she had been employed for nearly a year. Defendant, Christopher Green, was a coworker who had worked with her for approximately two months. While taking a break during her shift, Nancy went to the women's restroom. Shortly after, defendant entered the restroom without permission. Nancy asked him what he was doing, but he did not respond.

According to Nancy's testimony, defendant pushed her against the wall and restrained her. He started to kiss her neck and place his hands up her shirt. When she tried to leave, defendant grabbed her arm and tried to pull her into a stall. Defendant continued to restrain Nancy and attempted to reach into her pants. Nancy tried to leave a second time and defendant grabbed her again, placed his hands under her bra, and tried to get them down her pants. Defendant never responded to repeated pleas to stop. He finally stopped and left the restroom.

Nancy called her mother and immediately reported the incident to the police. Corporal Meadows of the Winston-Salem Police Department responded to the scene

---

[1] A pseudonym.

and took statements from Nancy and defendant. According to the police report, defendant admitted to following Nancy into the restroom and "that he picked her up by her ribs." Surveillance footage obtained from the restaurant later corroborated that defendant entered the restroom shortly after Nancy. Officers spoke with Nancy's mother, and she informed them that "her daughter called her crying, saying she was sexually assaulted by Mr. Green." Based on this evidence, the police consulted with a district attorney, placed defendant under arrest, and transported him to the magistrate's office.

Defendant was charged by magistrate's order with assault on a female and misdemeanor sexual battery. He was initially tried in District Court, Forsyth County, on 8 December 2022. He was found guilty as charged, and the trial court entered a Judgment Suspending Sentence. Defendant appealed this judgment and requested a jury trial in Superior Court, Forsyth County.

The superior court trial occurred on 7-9 August 2023. After hearing testimony from witnesses and reviewing the evidence, the jury found defendant guilty as charged. The superior court imposed the same sentence as the district court, including probation and associated conditions. Defendant subsequently filed a notice of appeal, challenging the sufficiency of the evidence for the assault charge and other procedural rulings made during the trial.

**II.**

**A.**

Defendant contends the trial court erred in denying the motion to dismiss the assault on a female charge due to insufficient evidence. Specifically, defendant argues the evidence failed to prove the allegation in the magistrate's order that he "picked up [the] victim by her body against the wall." The State persuasively refutes this argument by demonstrating that the evidence satisfied the essential elements of the offense, and the additional language in the charging document is immaterial.

The description in the magistrate's order—"picked up [the] victim by her body against the wall"—is not an essential element of the offense of assault on a female. Under N.C.G.S. § 14-33(c)(2), the State must prove three elements: (1) an assault, (2) upon a female, (3) by a male at least 18 years old. As the North Carolina Supreme Court explained in *State v. Taylor*, 280 N.C. 273, 276 (1972), "[a]llegations [in indictments] beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage." This rule prevents immaterial details from undermining valid convictions.

Here, the additional language in the charging document does not alter the nature of the offense. As this Court clarified in *State v. Henry*, 237 N.C. App. 311, 324 (2014), surplusage in criminal pleadings does not constitute a material variance unless it "fundamentally alter[s] the nature of the offense charged[.]" The trial court's instructions to the jury focused on the statutory elements, and defendant was clearly on notice of the assault on a female charge.

In determining whether to dismiss for insufficient evidence, this Court

considers whether there is "substantial evidence of each element of the offense charged[.]" *State v. Cox*, 375 N.C. 165, 168–69 (2020) (citation omitted). "[T]he weight and credibility of such evidence is a question reserved for the jury." *Id.* at 169 (citation omitted). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. McClaude*, 237 N.C. App. 350, 353 (2014). The evidence must be viewed in the light most favorable to the State, with all contradictions resolved in its favor. *Id.*

The victim testified that defendant pushed her against the wall, kissed her neck, and restrained her by grabbing her arm—all without her consent. These actions satisfy the legal definition of assault, which is

> an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.

*State v. Roberts*, 270 N.C. 655, 658 (1967) (citation omitted). The State also introduced video footage corroborating that defendant followed the victim into the restroom, further strengthening the case. While defendant highlighted inconsistencies in the victim's testimony, it is well established that credibility determinations are for the jury. *See Cox*, 375 N.C. at 169.

Defendant argues the jury instructions improperly tied the assault charge to the specific act of "picking up [the] victim by her body against the wall." The trial

court's instructions properly focused, however, on the essential elements of the offense—an intentional application of force by a male at least 18 years old upon a female—without requiring proof of the specific phrasing in the charging document.

This approach aligns with our emphasis on substance over form in criminal pleadings. The North Carolina Supreme Court has repeatedly cautioned against rigid reliance on archaic pleading rules, which prioritize technicality over equity. In *In re J.U.*, 384 N.C. 618, 622–23 (2023), the Court reaffirmed that modern pleading standards aim to ensure justice by focusing on the essential elements of the crime rather than immaterial descriptive language. Here, the surplus language in the magistrate's order—"picked up [the] victim by her body against the wall"—was unnecessary to establish the offense and did not prejudice defendant.

Thus, the relevant evidence presented at trial was "adequate to support a conclusion" that defendant committed an assault on a female. *McClaude*, 237 N.C. App. at 353. The jury instructions reflected the essential elements of the offense, and any surplus language in the magistrate's order did not create a fatal variance. Moreover, our Courts have consistently preferred submitting close cases to the jury. Borderline issues should be resolved by jurors "in reliance on the common sense and fairness of the twelve and to avoid unnecessary appeals." *State v. Glisson*, 251 N.C. App. 844, 848 (2017). Here, the jury evaluated the victim's testimony, the corroborating evidence, and the defense's challenges, ultimately concluding that defendant's actions constituted assault.

The trial court properly denied defendant's motion to dismiss the assault on a female charge. The victim's testimony, supported by corroborating video evidence, established the essential elements of the offense. Any surplusage in the charging document was immaterial and did not prejudice defendant.

**B.**

Defendant argues the trial court plainly erred in allowing Corporal Meadows to testify that he and Officer Stamey presented "both sides of the story" to the prosecutor, who then authorized charges against him. Defendant contends this testimony improperly vouched for the victim's credibility and prejudiced the jury. We determine, however, that the testimony did not constitute improper vouching, and any potential error was mitigated by jury instructions and insufficient to meet the plain error standard.

Under North Carolina law, the plain error standard is applied cautiously and only in exceptional cases where an unpreserved error is so fundamental that it likely impacted the jury's verdict. *State v. Lawrence*, 365 N.C. 506, 518 (2012). To establish plain error, the defendant must demonstrate that the error "had a probable impact on the jury's finding that the defendant was guilty." *Id.* (quoting *State v. Odom*, 307 N.C. 655, 660 (1983)). Mere speculation is insufficient; the defendant must show the error undermined the fairness and integrity of the proceedings. *Odom*, 307 N.C. at 660.

Defendant asserts Corporal Meadows' statement implied the prosecutor

believed the victim's account, thereby improperly influencing the jury. However, North Carolina courts have consistently held that testimony must amount to a direct or express opinion about a witness's credibility to constitute improper vouching. *See State v. Bailey*, 89 N.C. App. 212, 219 (1988) ("[T]estimony of an expert to the effect that a prosecuting witness is believable, credible, or telling the truth is inadmissible evidence.").

Here, Corporal Meadows' statement did not rise to this level. His testimony that the prosecutor authorized charges after hearing "both sides of the story" was part of the investigative narrative rather than an explicit endorsement of the victim's truthfulness. The challenged statement was incidental and not presented as fact under oath to establish credibility. Corporal Meadows' testimony merely described the process leading to the charges and did not specifically comment on the veracity of the victim.

Even if the testimony were deemed improper, the trial court provided clear jury instructions to mitigate any potential prejudice. The jury was repeatedly instructed that it was the "sole judge of the weight to be given to any evidence" and the "sole judge of the believability of a witness." The court also explicitly advised jurors that the fact that defendant was charged was "no evidence of guilt." North Carolina courts presume that jurors follow such instructions. *See State v. Glover*, 77 N.C. App. 418, 421 (1985) (assuming jurors are sufficiently intelligent to follow the court's instructions and are presumed to do so).

To meet the plain error standard, the defendant must show the alleged error likely impacted the jury's decision. *Lawrence*, 365 N.C. at 518. But the evidence against defendant, including the victim's testimony and corroborating video footage, was strong. The brief and incidental nature of the contested statement, combined with the jury instructions, rendered it unlikely to have swayed the verdict. Additionally, allowing testimony that charges were authorized does not inherently prejudice the jury because such authorization is a procedural requirement in all criminal cases. The jury was already aware that charges had been brought against defendant, and the prosecutor's role in the process was implicit.

The trial court did not commit plain error in allowing Corporal Meadows' testimony. The statement was not direct vouching, and any potential prejudice was mitigated by jury instructions and outweighed by the evidence supporting the conviction. Defendant has failed to meet the high threshold for plain error.

**C.**

Defendant contends the assault on a female charge is not supported by evidence distinct from the force inherent in the sexual battery charge. He argues the events in the restroom constituted a single, continuous act. The State refutes this argument, demonstrating that the evidence supports distinct interruptions between two separate assaults.

North Carolina law permits multiple assault charges if there is substantial evidence of a distinct interruption between separate acts. In *State v. Dew*, 379 N.C.

64, 72 (2021), the Supreme Court emphasized that a "distinct interruption" may involve an intervening event, a lapse of time to allow for a pause in the attack, or a clear change in the defendant's conduct. Additionally, "[e]vidence that a defendant used different methods of attack can show a distinct interruption depending on the totality of the circumstances." *Id.*

Here, the State argues defendant's conduct involved two separate acts: the initial physical assault and the later sexual battery. Each act was distinct in its method, intent, and timing.

The evidence at trial supports the conclusion that there was a distinct interruption between two separate assaults. The victim testified that defendant initially pushed her against the wall, pulled her by the neck, and kissed her on the neck multiple times. After this, defendant paused and ceased his initial contact. Following this pause, defendant subsequently grabbed her arm, attempted to restrain her, and tried to touch her private areas with the intent to commit sexual battery.

The testimony demonstrated a clear stopping point between the initial physical assault and the subsequent sexual battery. The pause in defendant's actions and the change in the nature of the contact—shifting from physical force to sexually motivated actions—constituted a sufficient interruption under *Dew*. The force used in the sexual battery was distinct from the earlier physical actions, such as pushing the victim against the wall and kissing her neck. These actions supported the assault on a female charge as separate and distinct from the sexual battery.

When considering sufficiency of evidence, courts view the evidence in the light most favorable to the State, resolving any contradictions in its favor. *McClaude*, 237 N.C. App. at 353. Here, the jury evaluated the evidence, including the victim's account and corroborating details, and found sufficient grounds to convict defendant of both charges. Appellate courts must defer to the jury's role in resolving factual disputes.

The evidence presented at trial established two distinct assaults, separated by a clear interruption in conduct. The first assault involved physical actions such as pushing and neck kissing, while the second involved a different intent and effort to engage in sexual touching. The trial court correctly denied defendant's motion to dismiss, as the evidence supported separate charges under established law. Accordingly, we discern no error in defendant's conviction for assault on a female.

## III.

After careful review of the record, we conclude that the trial court did not err in denying defendant's motion to dismiss the assault on a female charge. The evidence presented at trial sufficiently supported each element of the offense, and any surplus language in the magistrate's order was immaterial. Additionally, the trial court did not plainly err in admitting Corporal Meadows' testimony, as it was part of the investigative narrative and did not improperly vouch for the victim's credibility. Finally, the evidence established a distinct interruption between separate assaults, justifying separate convictions for assault on a female and misdemeanor

sexual battery. Accordingly, we discern no error in the trial court's rulings and uphold defendant's convictions.

NO ERROR.

Judge MURRY concurs.

Judge ARROWOOD concurs in the result only.

Report per Rule 30(e).