An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-485

Filed 1 April 2026

Gaston County, Nos. 20CR057372-350, 20CR057374-350, 20CR057375-350, 20CR057376-350, 20CR057377-350, 20CR057378-350, 20CR057379-350, 20CR057380-350, 20CR057386-350, 20CR057479-350, 20CR057480-350, 22CR001163-350, 22CR001164-350

STATE OF NORTH CAROLINA

v.

CHRISTOPHER GORDON JOHNSON, Defendant.

Appeal by defendant from judgments entered 23 July 2024 by Judge Nathaniel J. Poovey in Gaston County Superior Court. Heard in the Court of Appeals 13 January 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Kristin Cook McCrary, for the State-appellee.*

> *William D. Spence for defendant-appellant.*

GORE, Judge.

Defendant Christopher Gordon Johnson appeals from judgments entered upon jury verdicts finding him guilty of multiple sex offenses against his stepdaughter and three biological daughters.

On appeal, defendant raises four issues: (1) whether the trial court erred in denying his motion to dismiss two of the four statutory rape charges involving his step-daughter K for insufficient evidence; (2) whether the trial court erred in denying his motion to dismiss two charges of rape of a child under thirteen involving his daughter H for insufficient evidence and fatal variance; (3) whether the trial court plainly erred in admitting evidence of defendant's domestic violence against his wife; and (4) whether the trial court plainly erred in admitting other "bad acts" evidence, including evidence of defendant's physical abuse of his children, nudity in the home, pornography use, and marijuana use.

This Court has jurisdiction to hear defendant's appeal pursuant to N.C.G.S. §§ 7A-27(b) and 15A-1444(a) (2024).

For the reasons stated herein, we conclude the trial court did not err in denying defendant's motions to dismiss, and defendant has failed to demonstrate plain error in the admission of the challenged evidence. Accordingly, we discern no error.

**I.**

Defendant Christopher Gordon Johnson was tried on 18 felony sex offense charges involving his stepdaughter and four biological daughters. The charges spanned conduct alleged to have occurred between 1995 and 2008. At the close of the State's evidence, the trial court dismissed two charges in file 20 CRS 57381 relating to defendant's daughter S. The remaining 16 charges were submitted to the jury, which returned guilty verdicts on all counts on 17 July 2024.

The convictions included multiple counts of statutory rape (Class B1), first-degree sexual offense (Class B1), second-degree rape (Class C), indecent liberties with a child (Class F), and incest (Class B1). The trial court sentenced defendant to consecutive terms of imprisonment at prior record level 2, within the presumptive range. Defendant gave oral notice of appeal in open court.

Defendant married his wife in 1991. At the time, his wife had one daughter, K, whom defendant raised as his stepdaughter from infancy. Following the marriage, defendant and his wife had five additional children: A, S, H, B, and R. Defendant's wife passed away prior to trial.

The family moved frequently within Gaston County, residing longest at a house in Lowell where they moved when K began high school. The children had little privacy; defendant removed the door from the girls' shared bedroom. The relationship between defendant and his wife was described as "volatile." Witnesses testified defendant was physically abusive toward his wife and children. Defendant admitted during his own testimony that he hit his wife, stating he "knocked the crap out of her" and was "not proud of it."

The State presented testimony from four of defendant's daughters—K, A, H, and R—describing sexual abuse during their childhoods. None reported the abuse to law enforcement until 2020, when all were adults, prompted by concerns about defendant's unsupervised contact with grandchildren.

K testified that defendant began sexually abusing her around age five. The

abuse escalated over the years. When K was fifteen and in her freshman year of high school, defendant began having vaginal intercourse with her, which occurred frequently, "almost every night," on the bathroom floor.

K described specific incidents of vaginal intercourse during her freshman year, including after returning from a church youth trip to a haunted trail, when defendant "inserted his penis into [her] vagina." She also described an incident after returning from an overnight church trip called "Winterfest," when defendant took her to the bathroom and did "the same thing he would usually do" and "performed sex on me." K testified the abuse continued until age eighteen. She stated she never reported because she was "too afraid."

H testified defendant first sexually abused her when she was twelve years old and about to begin sixth grade, around 2005 or 2006, at the Lowell house. She testified defendant woke her at night, removed her clothing, and took her to the bathroom where "intercourse" occurred. H testified that defendant's penis did not go "all the way in, but he was definitely trying to make it," and that it hurt.

H testified to subsequent incidents of vaginal intercourse when she was "12, 13" years old after moped rides to a trail. She stated that during the first trail incident, defendant fully inserted his penis into her vagina. H also described incidents in a backyard shed when she was "[a]gain, 12 to 13," testifying these occurred "more than once." H eventually confided in her brother B when she was around middle school age.

A and R also testified about sexual abuse by defendant during their childhoods. B, defendant's only son, testified about the family's home environment, defendant's abuse of the children and their mother, and his observations of defendant's conduct.

The State presented expert testimony from Heather Kauffman regarding victim responses to sexual abuse. Ms. Kauffman testified about reasons victims delay reporting and explained "script memory," which causes victims of repeated abuse to describe events in general rather than specific terms.

Defendant testified and denied sexually abusing any of his daughters. His daughter S testified for the defense that defendant never touched her inappropriately, though she acknowledged he physically abused her and her mother. Defendant's mother testified she never heard allegations of sexual abuse.

During his testimony, defendant admitted physically abusing his wife and acknowledged his older children witnessed some of this abuse.

At the close of the State's evidence, defendant moved to dismiss all charges. The trial court denied the motion as to all charges except those relating to S. Defendant renewed his motion at the close of all evidence, which was again denied.

## II.

Defendant first argues the trial court erred in denying his motion to dismiss two of the four statutory rape charges involving K in files 20 CRS 57374 and 57375. Specifically, defendant contends the evidence was insufficient to support the charge based on the incident after K returned from Winterfest and that no evidence supports

a fourth count of statutory rape when K was fifteen or younger. We disagree.

**A.**

This Court reviews a trial court's denial of a motion to dismiss de novo. *State v. Golder*, 374 N.C. 238, 250 (2020). In ruling on a motion to dismiss, "the trial court must determine whether there is substantial evidence of each essential element of the offense charged . . . and of the defendant being the one who committed the crime." *State v. Stone*, 323 N.C. 447, 451 (1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (cleaned up).

The evidence must be viewed in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from the evidence. *Id.* at 451–52. "Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal." *State v. Smith*, 300 N.C. 71, 78 (1980) (citation omitted). "If there is more than a scintilla of competent evidence to support the allegations in the . . . indictment, it is the court's duty to submit the case to the jury." *State v. Horner*, 248 N.C. 342, 344–45 (1958) (citations omitted).

**B.**

To prove statutory rape under N.C.G.S. § 14-27.25 (formerly § 14-27.7A), the State must establish that the defendant engaged in vaginal intercourse with a victim who is fifteen years of age or younger and that the defendant is at least six years older than the victim. Defendant does not dispute K's age or the age differential.

Rather, he challenges only whether the evidence established vaginal intercourse as to two of the four counts.

*1.*

Defendant argues that K's testimony regarding the incident after the Winterfest trip—that defendant did "the same thing he would usually do" and "performed sex on me"—is too vague to establish vaginal intercourse. We are not persuaded.

Our Supreme Court has held that the terms "intercourse" and "sex" are "sufficient as shorthand statements of fact on the issue of penetration." *State v. Ashford*, 301 N.C. 512, 514 (1980). A victim is not required to use "any particular form of words" to indicate penetration occurred. *Id.*

Here, K's testimony, viewed in the light most favorable to the State, was sufficient. Before describing the Winterfest incident, K had already testified in detail about what defendant's "usual" conduct entailed. She testified that at the beginning of her freshman year, when she was fifteen, defendant inserted "his penis into my vagina" for the first time. She further testified that thereafter, vaginal intercourse occurred "very often, almost every night" on the bathroom floor. K also described the haunted trail incident, which occurred during the same school year, testifying that defendant "inserted his penis into [her] vagina."

Against this backdrop, K testified that after returning from Winterfest during her freshman year, defendant took her into the bathroom and did "the same thing he

would usually do" and "perform[ed] sex on me." When asked whether defendant wore a condom during the Winterfest or haunted trail incidents, K responded that he did not.

"[T]he State is entitled to every reasonable inference to be drawn from the evidence." *Stone*, 323 N.C. at 452. K's use of the term "sex" is sufficient shorthand for penetration under *Ashford*. Moreover, her testimony that defendant did "the same thing he would usually do" permits a reasonable inference that defendant engaged in the same conduct he had been engaging in "almost every night"—vaginal intercourse. This constitutes substantial evidence of vaginal intercourse sufficient to survive a motion to dismiss.

### 2.

Defendant next argues that K did not testify to a fourth specific incident of vaginal intercourse when she was fifteen or younger, and therefore no evidence supports the fourth statutory rape charge. We disagree.

This Court has recognized that "generic" testimony—where "a victim recounts a long history of repeated acts of sexual abuse over a period of time, but does not give testimony identifying specific events surrounding each sexual act"—may be sufficient to support multiple charges. *State v. Bullock*, 178 N.C. App. 460, 471 (2006). In *Bullock*, this Court upheld eleven counts of statutory rape supported by the victim's testimony that the defendant had sex with her "more than twice a week" over the course of several months. *Id.* at 473.

Here, K testified that after the first incident of vaginal intercourse at the beginning of her freshman year, defendant had intercourse with her "very often, almost every night" until she turned eighteen. K was fifteen during her freshman year. The State's expert, Ms. Kauffman, explained that victims of repeated abuse commonly use "script memory," describing events "in more general terms" rather than recounting each specific incident.

Defendant was charged with four counts of statutory rape occurring when K was fifteen. K testified to three specific incidents during her freshman year: the first time at the beginning of the school year, after the haunted trail trip, and after the Winterfest trip. She also testified to near-nightly abuse throughout that year.

Considering the frequency of the abuse K described, there is far more than a scintilla of evidence to support a fourth incident of vaginal intercourse during K's freshman year beyond the three specific incidents she recounted. *See Horner*, 248 N.C. at 344–45. Indeed, K's testimony that intercourse occurred "almost every night" during her freshman year would support substantially more than four counts. The trial court properly submitted this charge to the jury.

The trial court did not err in denying defendant's motion to dismiss the challenged statutory rape charges against K. The evidence, viewed in the light most favorable to the State, was sufficient to support all four counts.

**III.**

Defendant next argues the trial court erred in denying his motion to dismiss

the two charges of first-degree rape of H in file 20 CRS 57380. The indictments alleged defendant "did carnally know and abuse H, a child under the age of 13." Defendant contends (1) H's testimony regarding the first incident—that defendant's penis "didn't go all the way in"—is insufficient to establish vaginal intercourse, and (2) H's testimony that she was "12, 13" during subsequent incidents creates a fatal variance because the evidence does not establish she was under thirteen as charged. We address each argument in turn and discern no error.

**A.**

"Any fatal variance argument is, essentially, an argument regarding the sufficiency of the State's evidence." *State v. Lopez*, 295 N.C. App. 239, 246 (2024) (cleaned up). "Accordingly, we employ de novo review." *Id.* Defendant's motion to dismiss preserved his variance argument for appellate review. *State v. Clagon*, 279 N.C. App. 425, 431 (2021).

The legal principles governing our sufficiency review are set forth in Issue I and apply with equal force here. The evidence must be viewed in the light most favorable to the State, the State is entitled to every reasonable inference, and contradictions and discrepancies are for the jury to resolve. *Stone*, 323 N.C. at 451–52.

**B.**

An indictment alleging a defendant "unlawfully, willfully, and feloniously did carnally know and abuse" a child under thirteen is "good and sufficient" to charge

rape. N.C.G.S. § 15-144.1(a) (2024). "Rape is the carnal knowledge of a female person by force and against her will." *State v. Flippin*, 280 N.C. 682, 684 (1972) (citation omitted). Carnal knowledge occurs when "there is the slightest penetration of the female sex organ by the male sex organ." *Id.*

The trial court instructed the jury that defendant was charged with "two separate counts of rape of a child" and that the State must prove defendant "engaged in vaginal intercourse with H" when she was under thirteen and he was eighteen or older. The court further instructed that "[v]aginal intercourse is penetration, however slight, of the female sex organ by the male sex organ."

## C.

### 1.

Defendant argues H's testimony about the first incident of sexual abuse is "vague, indefinite, [and] ambiguous" and insufficient to establish vaginal intercourse because H stated defendant's penis did not go "all the way in." We disagree.

H testified that defendant first sexually abused her when she was twelve years old and about to begin sixth grade, around 2005 or 2006, while living in the Lowell house. She testified that defendant woke her at night, removed her clothing, and instructed her to follow him to the bathroom. When H initially refused, defendant smacked her across the face; she then complied out of fear. H testified that in the bathroom, defendant laid her on her back and "intercourse" occurred. When asked to clarify, H stated: "His penis didn't go all the way in, but he was definitely trying to

make it." H further testified that defendant "hurt" her during this incident.

Our Supreme Court has held that the term "intercourse" is "sufficient as [a] shorthand statement[ ] of fact on the issue of penetration." *Ashford*, 301 N.C. at 514. Moreover, carnal knowledge requires only "the slightest penetration" of the female sex organ. *Flippin*, 280 N.C. at 684. H's testimony that defendant's penis did not go "all the way in" does not negate the possibility of slight penetration—it confirms that some penetration occurred.

Viewing the evidence in the light most favorable to the State, H's testimony that "intercourse" occurred, that defendant was "definitely trying" to insert his penis, and that he "hurt" her constitutes substantial evidence that defendant achieved at least slight penetration of H's vagina. This is sufficient to establish vaginal intercourse under *Flippin*. The trial court properly denied defendant's motion to dismiss this charge.

### 2.

Defendant also challenges the second count, arguing that H's testimony she was "12, 13" during subsequent incidents creates a fatal variance between the indictment—which charged rape of a child under thirteen—and the proof at trial. Defendant contends this "indefinite testimony as to H's age at the time of the moped event is insufficient to carry the indicted charge to the jury." We are not persuaded.

A variance between an indictment and the evidence at trial is fatal only when it involves "an essential element of the crime charged." *Lopez*, 295 N.C. App. at 246–

48. When the variance does not deprive the defendant of adequate notice to prepare a defense, it is not material and therefore not fatal. *State v. Holanek*, 242 N.C. App. 633, 645 (2015).

H testified that defendant forced her to have "intercourse" with him after moped rides to a trail while living in the Lowell house. When asked her age during these incidents, H responded "12, 13." She testified that during the first trail incident, defendant fully inserted his penis into her vagina. H also testified to incidents of intercourse in the backyard shed, stating her age was "[a]gain, 12 to 13." Importantly, H testified these shed incidents occurred "more than once."

Defendant characterizes H's testimony as indicating she was "12 or 13"— suggesting an either/or proposition that renders her age uncertain. However, H's actual testimony—"12, 13" and "12 to 13"—indicates a range during which the repeated abuse occurred, not a single incident of uncertain timing. H testified the shed incidents happened "more than once" over this age range. The jury could reasonably infer that at least one of these multiple incidents occurred when H was still twelve years old.

The indictment alleged an offense date range of 1 August 2005 to 1 February 2006. H was born 7 August 1993, meaning she turned thirteen in August 2006—after the charged offense period ended. H testified the abuse at the Lowell house began when she was twelve, around 2005 or 2006, at the start of sixth grade. The moped and shed incidents occurred during the same period while the family lived in Lowell.

Viewing this evidence in the light most favorable to the State, a jury could reasonably conclude that at least one incident of vaginal intercourse—beyond the first incident in the bathroom—occurred when H was twelve years old and within the charged time frame. H's testimony about repeated incidents during the "12 to 13" age range, combined with the offense dates alleged in the indictment, provides substantial evidence that defendant committed a second rape of H when she was under thirteen. "Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal." *State v. Smith*, 300 N.C. 71, 78 (1980) (citations omitted).

There is no fatal variance. H's testimony supports the charges as alleged in the indictment, and the evidence was sufficient for the jury to find defendant guilty of both counts of rape of a child under thirteen.

The trial court did not err in denying defendant's motion to dismiss the two charges of rape of a child under thirteen. The evidence, viewed in the light most favorable to the State, established vaginal intercourse as to both counts and that H was under thirteen at the time of the offenses. Defendant's arguments are overruled.

**IV.**

Defendant argues the trial court erred in allowing the State to introduce evidence of his physical abuse of his wife. Defendant acknowledges he did not consistently object to this testimony and requests plain error review. Even assuming the trial court erred in admitting this evidence, defendant has failed to demonstrate plain error.

**A.**

Under Rule 10(a)(4) of the North Carolina Rules of Appellate Procedure, an unpreserved issue may be raised on appeal in a criminal case when the defendant specifically and distinctly contends the trial court's action constitutes plain error.

To establish plain error, a defendant must demonstrate that (1) a fundamental error occurred at trial, (2) the error was prejudicial, having a "probable impact on the jury's finding that the defendant was guilty," and (3) the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings" so as to constitute "a miscarriage of justice." *State v. Lawrence*, 365 N.C. 506, 517–18 (2012) (quoting *State v. Odom*, 307 N.C. 655, 660 (1983)). "Probable impact" means the jury "probably would have reached a different verdict" absent the error; "probably" is defined as "significantly more likely than not." *State v. Reber*, 386 N.C. 153, 159 (2024).

Plain error review is applied "cautiously" and only in the "exceptional case" where the error is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *Odom*, 307 N.C. at 660 (cleaned up). The defendant bears the burden of showing prejudice under plain error review. *State v. Davenport*, 386 N.C. 454, 465–66 (2024).

**B.**

During K's testimony, the State asked about defendant's treatment of her mother. Defendant objected, arguing he was "not on trial for anything he did to the mother" and that such evidence would be "prejudicial and inflammatory." Outside

the jury's presence, the State argued the evidence was relevant to explain why K never reported the abuse—"because of her fear of what would happen, and what she saw."

The trial court acknowledged the evidence was "certainly prejudicial," commenting that K was "testifying . . . right off the get-go here, about the defendant being . . . pretty much a monster." The court recognized "there is a line" and that K could not "testify about anything he did his entire life." However, the court determined the evidence was "relevant and admissible" to explain delayed reporting and that "the probative value of it outweighs the danger of unfair prejudice."

Following this ruling, defendant did not object to subsequent testimony from K or other witnesses about domestic violence. Multiple witnesses testified that defendant hit, kicked, punched, and pushed their mother; that they witnessed defendant knock out their mother's tooth; and that defendant burned their mother's neck with a car cigarette lighter.

**C.**

Defendant relies on *State v. Brooks*, 113 N.C. App. 451 (1994), where this Court determined the trial court erred by permitting the State to cross-examine the defendant about prior domestic violence against his wife. In *Brooks*, the defendant was charged with second-degree murder of his stepdaughter's boyfriend, and this Court concluded the domestic violence evidence had "no relevancy" and served only to show the defendant's violent character. 113 N.C. App. at 458.

Even assuming the reasoning of *Brooks* applies here, and the trial court erred in admitting the domestic violence evidence, defendant cannot satisfy the demanding plain error standard. We conclude defendant has failed to demonstrate plain error for two independent reasons.

*1.*

Defendant himself testified on direct examination about his physical abuse of his wife. He stated: "I hit her, but she hit me too. I am not making excuses for myself. Don't get me wrong, and other times I knocked the crap out of her. I ain't proud of it. I wish I could change it." Defendant further testified that three of his oldest children witnessed him assault their mother, causing her to lose a tooth. He also admitted burning her with a car cigarette lighter, leaving a scar.

"A defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct." N.C.G.S. § 15A-1443(c) (2024). A defendant waives appellate review of challenged testimony when "a defendant himself offered testimony that is similar to the testimony from the witness that defendant challenges on appeal." *State v. Crane*, 269 N.C. App. 341, 343 (2020) (citation omitted). Moreover, a defendant cannot show prejudice when evidence of similar import was admitted without objection and is not challenged on appeal. *State v. Trull*, 349 N.C. 428, 456 (1998); *see also State v. Alford*, 339 N.C. 562, 570 (1995) (reasoning the benefit of an objection is "lost" when the same evidence was admitted without objection).

Here, defendant not only failed to consistently object to the State's witnesses testifying about domestic violence, but he affirmatively presented the same evidence during his own testimony. Defendant admitted hitting his wife, acknowledged his children witnessed at least one assault, and confirmed the cigarette lighter incident. Because defendant himself placed this evidence before the jury, he cannot demonstrate prejudice from its admission through the State's witnesses.

### 2.

Even setting aside waiver, defendant cannot show the admission of domestic violence evidence had a "probable impact" on the jury's verdict such that the jury "probably would have reached a different result." *Reber*, 386 N.C. at 159–61.

Four victims—K, A, H, and R—testified in detail about defendant's sexual abuse over a period of years. The jury heard specific testimony about multiple incidents of sexual touching, attempted assaults, and vaginal intercourse. The jury had the opportunity to observe these witnesses and assess their credibility.

Moreover, evidence of defendant's violence was not limited to his treatment of his wife. The evidence showed defendant's violence was directly intertwined with the charged sexual offenses. K testified defendant sometimes punched her in the stomach after sexually abusing her. A testified defendant hit her when she would not submit to his sexual demands. H testified defendant smacked her across the face when she initially resisted his instruction to follow him to the bathroom, where he then sexually assaulted her. This evidence of violence directly connected to the sexual abuse was

not challenged on appeal and provided independent support for the jury's understanding of defendant's conduct.

Given the overwhelming evidence of guilt from four victims' detailed testimony and the evidence of violence directly linked to the sexual offenses, defendant cannot show the jury probably would have returned a different verdict absent the domestic violence evidence. *See Davenport*, 386 N.C. at 465–66.

**3.**

Finally, defendant has failed to demonstrate this is the "exceptional case" warranting plain error relief. *Odom*, 307 N.C. at 660. An "empty assertion of plain error, without supporting argument or analysis of prejudicial impact," is insufficient. *State v. Cummings*, 352 N.C. 600, 637 (2000). This Court has declined plain error review when a defendant "offer[ed] nothing on why this is an exceptional case or why this will seriously affect the fairness, integrity, or public reputation of judicial proceedings." *State v. Patterson*, 269 N.C. App. 640, 645 (2020).

Defendant's reliance on *Brooks* is misplaced. *Brooks* involved preserved error subject to a different standard of review; here, defendant concedes plain error review applies. Under the more demanding plain error standard, defendant has not shown— and cannot show—that the admission of domestic violence evidence constituted a fundamental error amounting to a miscarriage of justice.

Assuming without deciding that the trial court erred in admitting evidence of defendant's domestic violence against his wife, defendant has failed to meet the plain

error threshold. Defendant's own testimony placed the same evidence before the jury, and the overwhelming evidence of guilt from four victims precludes any showing that the jury probably would have reached a different result. Defendant's argument is overruled.

## V.

Defendant's final argument is that the trial court erred in admitting testimony about his physical abuse of the children, nudity in the home, pornography use, and marijuana use. Defendant acknowledges he did not consistently object to this evidence and requests plain error review. Because plain error review does not permit the cumulative analysis defendant requests, and because defendant fails to demonstrate plain error as to any specific category of evidence, we reject this argument.

## A.

The plain error standard set forth in Issue III applies with equal force here. To establish plain error, defendant must show a fundamental error that had a probable impact on the jury's verdict and seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Lawrence*, 365 N.C. at 517–18 (2012).

Critically, errors cannot "be 'compounded' under plain error review." *State v. Moore*, 366 N.C. 100, 108 (2012). Thus, "prejudice under plain error is not reviewed on a cumulative basis." *State v. Lane*, 271 N.C. App. 307, 316 (2020). Rather, "a defendant must show that each individual error rises to the level of plain error." *State*

*v. Worley*, 268 N.C. App. 300, 304 (2019) (cleaned up).  When a "defendant contests separate admissions of evidence under the plain error rule, each admission will be analyzed separately for plain error, not cumulatively." *State v. Jones*, 176 N.C. App. 678, 685 (2006) (cleaned up).

**B.**

Defendant's brief treats the challenged evidence cumulatively, arguing that "this type of testimony" collectively portrayed him as "a mean person of bad and violent character" and "a monster."  However, defendant fails to separately analyze each category of evidence or articulate how each specific category independently rises to the level of plain error.  This approach is foreclosed by *Moore* and *Lane*.

Nevertheless, we address each category of challenged evidence in turn.

*1.*

Defendant challenges testimony that he physically abused his children during their upbringing.  However, defendant failed to consistently object to this testimony.  Although the trial court overruled defendant's objections to certain questions about K's fear of defendant and A's broken finger, the same or similar evidence was admitted at other times without objection.  "It is well established that the admission of evidence without objection waives prior or subsequent objection to the admission of evidence of a similar character." *State v. Campbell*, 296 N.C. 394, 399 (1979).

Even assuming error, defendant cannot show plain error.  The evidence showed defendant's physical violence was directly connected to the charged sexual offenses.

K testified defendant sometimes punched her in the stomach after sexual abuse. A testified defendant hit her when she refused his sexual demands. H testified defendant smacked her when she initially resisted his instruction to go to the bathroom, where he then sexually assaulted her. This violence was part and parcel of the sexual abuse itself. Given this intertwined evidence and the detailed testimony from four victims about specific acts of sexual abuse, defendant cannot demonstrate the jury probably would have reached a different verdict absent the physical abuse testimony. *Reber*, 386 N.C. at 159–61.

Defendant fails to show plain error as to this category of evidence.

**2.**

Defendant challenges testimony that he walked around the home naked. However, defendant never objected to this testimony at trial. The issue is therefore reviewable, if at all, only for plain error.

The State presented expert testimony that "testing around nudity" is a recognized grooming technique that can be directed at individuals or the environment. Evidence of defendant's habitual nudity in a household where he was sexually abusing multiple children has relevance beyond mere propensity—it tends to show defendant's preparation, opportunity, and the context in which he committed the charged offenses. *See State v. Agee*, 326 N.C. 542, 548 (1990) (evidence admissible when it "forms an integral and natural part of an account" or is "necessary to complete the story of the crime for the jury").

Even assuming error, given the overwhelming evidence of sexual abuse from four victims, defendant cannot show the jury probably would have returned a different verdict absent testimony about his nudity. Defendant fails to show plain error as to this category of evidence.

*3.*

Defendant challenges testimony about his possession and use of pornography. However, defendant's objections were inconsistent; while he objected at certain points, the same or similar evidence was admitted without objection at other times. This waives the objection under *Campbell*.

Moreover, this evidence was not introduced merely to show bad character. K testified that defendant showed her pornography depicting a woman with a groomed vagina, told her "this is what you should look like," and then shaved K's vagina. This evidence was directly linked to defendant's sexual abuse of K and was relevant to show defendant's intent, motive, and the manner in which he committed the offenses.

Even assuming error, defendant cannot demonstrate the jury probably would have reached a different result without this evidence given the detailed testimony of sexual abuse from four victims. Defendant fails to show plain error as to this category of evidence.

*4.*

Defendant challenges testimony that he used marijuana while watching the children bathe. The trial court sustained defendant's objections to this testimony

during K's and A's testimony but overruled the objection during R's testimony.

Assuming the trial court erred in overruling the objection during R's testimony, defendant cannot show prejudice. Defendant himself testified on direct examination that he smoked marijuana for years and was charged with trafficking marijuana when he was caught with ten pounds. A defendant cannot show prejudice from evidence he himself presented. N.C.G.S. § 15A-1443(c); *Crane*, 269 N.C. App. at 343.

Defendant fails to show plain error as to this category of evidence.

*5.*

Finally, defendant references portions of B's testimony, including defendant's sexual comment to B about waking up with a condom, B's statement that he suffers from PTSD and other mental illness from childhood trauma, and B's testimony that he hates defendant. Defendant's brief mentions this testimony in the factual summary but fails to articulate any specific argument as to why its admission constitutes plain error. An argument not raised or addressed in an appellant's brief is deemed abandoned. N.C.R. App. P. 28(b)(6).

Even if reviewed, defendant cannot show plain error. The trial court overruled defendant's relevancy objection to the condom comment, but this evidence was relevant to show defendant's sexual comments to his children and the context of his control over the household. B's testimony about trauma and his feelings toward defendant was admitted without objection, and defendant's counsel elicited further testimony about B's hatred on cross-examination. A defendant cannot complain of

error resulting from his own conduct. N.C.G.S. § 15A-1443(c).

Defendant fails to show plain error as to B's testimony.

**C.**

Defendant's cumulative approach to plain error review is foreclosed by *Moore* and *Lane*. Analyzing each category of evidence separately, defendant has failed to demonstrate that any specific admission constitutes plain error. The evidence was either admitted without consistent objection, directly relevant to the charged offenses, or introduced by defendant himself. In light of the overwhelming evidence of guilt from four victims' detailed testimony, defendant cannot show the jury probably would have reached a different verdict absent any of the challenged evidence. Defendant's argument is overruled.

**VI.**

For the foregoing reasons, we hold as follows:

As to Issue I, the trial court did not err in denying defendant's motion to dismiss the challenged statutory rape charges involving K. The victim's testimony that defendant "performed sex" on her and did "the same thing he would usually do" after the Winterfest trip, combined with her testimony of near-nightly intercourse during her freshman year, constitutes substantial evidence of vaginal intercourse sufficient to support the challenged counts.

As to Issue II, the trial court did not err in denying defendant's motion to dismiss the two charges of rape of a child under thirteen involving H. The victim's

testimony that "intercourse" occurred and that defendant hurt her while "definitely trying" to insert his penis constitutes substantial evidence of at least slight penetration. Her testimony that the abuse occurred when she was "12 to 13" and happened "more than once" permits a reasonable inference that at least one incident occurred when she was under thirteen. There is no fatal variance between the indictment and the proof at trial.

As to Issue III, assuming without deciding that the trial court erred in admitting evidence of defendant's domestic violence against his wife, defendant has failed to demonstrate plain error. Defendant himself testified about his abuse of his wife, and the overwhelming evidence of guilt from four victims precludes any showing that the jury probably would have reached a different result.

As to Issue IV, defendant has failed to demonstrate plain error as to any specific category of challenged "bad acts" evidence. Plain error review does not permit cumulative analysis, and defendant has not shown that any individual category of evidence rises to the level of plain error.

NO ERROR.

Judges STROUD and FLOOD concur.

Report per Rule 30(e).